**DISTRICT OF COLUMBIA, Appellant,**

v.

**P. L. M., Appellee.**

**No. 7894.**

District of Columbia Court of Appeals,

Argued Jan. 31, 1974.

Decided Oct. 1. 1974.

---

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellant.

Thomas A. Guidoboni, Washington, D. C., for appellee.

Earl J. Silbert, U. S. Atty., John A. Terry, Paul L. Friedman and William M. Brodsky, Asst. U. S. Attys., were on the memorandum of the United States as amicus curiae. James F. McMullin, Asst. U. S. Atty., entered an appearance.

Before FICKLING, GALLAGHER and PAIR, Associate Judges.

GALLAGHER, Associate Judge:

This is an appeal by the government from a dismissal by the Superior Court of a petition alleging juvenile delinquency because only a federal offense was charged to support the petition.[1] The trial court held that the Family Division of Superior Court had no jurisdiction to try a juvenile in these circumstances as jurisdiction was lodged in the United States District Court, not the Superior Court. We reverse.

Because of the federal jurisdiction question in this case, we obtained an *amicus curiae* memorandum from the United States Attorney stating his position on this issue, to which we will later refer.

We start with the proposition that juvenile delinquency is essentially a local concern. As between the local community and the federal government one would hardly say that juvenile delinquency is primarily a federal concern because it is evident it is at bottom a responsibility of the community. If we have, as we do have to a distressing degree, juvenile delinquents they are not either local delinquents or federal delinquents—they are juvenile delinquents and they are the problem of the local community primarily, barring a controlling statutory provision to the contrary.

█ Under the governing local statute the Family Division of the Superior Court has jurisdiction over a "child" charged with a delinquent act, this being an act designated as "an offense under the law of the District of Columbia, or of a State *if* the act occurred in a State, or *under Federal* law . . . ." (D.C.Code 1973, § 16–2301(7)) (emphasis added). It is apparent from this congressional enactment of a jurisdictional statement that an act charged as a violation of a federal statute comes within the jurisdiction of the Family Division (Juvenile Branch) of the Superior Court.[2] This accords with prior history in this jurisdiction. For years, the local Juvenile Court has had jurisdiction over

---

1. 21 U.S.C. § 841(a) (1970) which prohibits the knowing and intentional distribution of a controlled substance, here lysergic acid diethylamine (LSD).

2. This also accords with the statutory procedure in many states, *e. g.*, Ala.Code tit. 13, § 350 (1958); Ariz.Rev.Stat.Ann. § 8–201 (1974); Cal.Welf. & Inst'ns Code § 602 (West.Supp.1974); Conn.Gen.Stat.Rev. § 17– 53 (1972); Fla.Stat. § 39.01 (1971); Ga. Code Ann. § 24A–401 (Supp.1973); Idaho Code § 16–1803 (Supp.1973); Ill.Rev.Stat. ch. 23, § 2360a (1973); Minn.Stat.Ann. § 260.015 (1971); Okla.Stat.Ann. tit. 10, § 1101 (Supp.1974); S.D.Compiled Laws § 26–8–7 (Supp.1974); Vt.Stat.Ann. tit. 33, § 632 (Cum.Supp.1974); Va.Code Ann. (Supp.1974); Wis.Stat.Ann. § 48.12 (Supp. 1974).

delinquent acts arising out of violations of criminal statutes whether local or federal.[3]

■ Appellee's principal position is that where violation of a federal statute is alleged, the Superior Court (Juvenile Branch) may assume jurisdiction over a juvenile only if the United States District Court waives "its primary and exclusive jurisdiction through the mechanism provided in 18 U.S.C. 5001." This is not what Congress intended in enacting that surrender statute.

Essentially, the statute provides that where a juvenile is arrested and charged with a federal violation and, upon investigation by the Department of Justice, it appears that he has committed an offense under the laws of any state (or the District of Columbia)[4] and the state will take custody of the juvenile and deal with him under its laws, and it is considered to be in the best interests of the United States and the juvenile offender to surrender him, the United States Attorney in the district where the arrest took place may forego his prosecution and surrender him to the United States Marshal for delivery to the State.[5] It goes on to authorize the use of federal funds for this purpose.

On the purpose of this bill (H.R.10598), the House Report states in pertinent part:

This bill would authorize the Department of Justice to turn over to the State of his domicile any juvenile arrested charged with the commission of a crime punishable in a court of the United States or of the District of Columbia if it appears after investigation that the juvenile has committed a criminal offense or is a delinquent under the laws of such State and that such State will assume jurisdiction over the juvenile and will take him into custody and deal with him according to the laws of such State, and that it will be for the best interest of the United States and the juvenile so to surrender him and forego prosecution on the Federal charge. (H.R.Rep.No.958, 72nd Cong., 1st Sess., 1 (1932)).

Supporting the bill, Attorney General William D. Mitchell wrote the Chairman of the House of Representatives Committee on the Judiciary the following:

This measure is designed to provide for cooperation with the State in the care and treatment of juvenile offenders; the more rational handling of immature offenders, who, it is believed, should be cared for by the communities from which they come and in which they are known; and to relieve the United States of the responsibility of dealing with this class of offenders, for which the Federal Government is not equipped to deal properly. (*See* H.R.Rep.No.958, 72nd Cong., 1st Sess., 2 (1932)).

---

3. *See, e. g.*, (a) The Juvenile Court Act of 1906, Pub.Law 59–56, 34 Stat. 73; the House Report on this legislation stated ". . . [t]he Bill provides for a separate court, specially officered, having jurisdiction over crimes and offenses of persons under 17 years of age *committed against the United States in the District of Columbia, as well as against the District itself.*" (H.R.Rep. No. 2169, 59th Cong., 1st Sess., 3 (1906)) (emphasis added).

(b) The Juvenile Court Act of 1938, Act of June 1, 1938, Pub.Law 75–571, 52 Stat. 596 *et seq.* This gave the Juvenile Court jurisdiction over youths "charged with having violated *any law, or* violated any ordinance or regulation of the District of Columbia" (52 Stat. 597) (emphasis added).

(c) In 1963 there was a revision and codification of Titles 11–17 of the District of Columbia Code (Act of December 23, 1963, Pub.Law 88–241, 77 Stat. 478 *et seq.* Congress in so doing, provided jurisdiction where a child has "violated *a law, or* has violated an ordinance or regulation of the District of Columbia." (77 Stat. 498, D.C.Code 1967, § 11–1551) (emphasis added). For present purposes, there was no material change from the previous statute.

4. It is not required that the State (or the District) be the juvenile's domicile.

5. It also requires either the juvenile's consent to the transfer or a demand by the executive authority of the State (or District of Columbia) supported by an indictment or a Section 3182 affidavit.

In a memorandum accompanying his letter, the Attorney General stated:

The records show that annually nearly 2,000 juvenile offenders fall into the clutches of Federal officers, charged with the violation of Federal laws. . . .

Many of these cases arise under the Dyer Act, where juveniles steal cars in one state and move them in interstate commerce and are arrested by Federal authorities in another state. There are · not enough juveniles brought into the Federal courts to justify the establishment of juvenile courts by act of Congress. The Federal penal institutions are not adequately equipped to deal with this class of juvenile delinquency. A moral responsibility for dealing with such cases rests with the local authorities where the juvenile is domiciled. Such juvenile delinquents can be more intelligently dealt with in their own interest by the juvenile agencies of their own communities. . . .

More than two years ago the Attorney General, realizing these conditions, undertook, by administrative action, to arrange for the return to State authorities all juvenile delinquents. falling into the hands of the Federal law officers in places away from their homes. He was confronted at once with the fact that there is no authority in law for paying the traveling expenses of Federal law officers in returning such delinquents to their home communities, and often the State authorities will not send for them. This bill is intended to give that authority. . . . (*See* H.R.Rep.No.958, 72nd Cong., 1st Sess., 2 (1932). *See also* discussion of bill on House floor at 75 Cong.Rec.10350 (1932)).

■ We view this statute fundamentally as a surrender statute referring to federal arrestees then located away from their local communities, as the legislative history demonstrates. It does not apply to the situation we have here, where the primary question is whether in this unusual jurisdiction[6] the Juvenile Branch of the Superior Court has jurisdiction in the circumstances of this case. In the legislation creating the Superior Court, Congress specifically, and with obvious good reason, gave it such jurisdiction.

■ The real question here is not whether the Family Division of the Superior Court has jurisdiction to hear a juvenile case stemming from a violation of a federal statute but whether the jurisdiction of that court is exclusive or concurrent with the federal court. The United States Attorney and the Corporation Counsel both take the position that jurisdiction is concurrent. It is apparent, as we have stated, that the Juvenile Branch of the Family Division has jurisdiction. It is likewise apparent that where the alleged juvenile delinquency is bottomed upon a charged violation of a federal statute, there is a potential federal interest because (a) the charge involves a federal statute and (b) secondarily, there is a Federal Juvenile Delinquency Act.[7] But since juvenile delinquency is fundamentally a local concern from a societal viewpoint, we regard the jurisdiction of the Juvenile Branch to be primary. As we view it this is the net effect of the United States Attorney's position.[8]

On the other hand, it may be that in rare instances, with a federal criminal violation being charged, the United States Attorney may consider there is a compelling federal interest to proceed against a youth

---

6. By this we mean the District of Columbia which so far as pertinent here is a federal jurisdiction with the local Superior Court being created by Congress under article I of the Constitution, Palmore v. United States, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973), and the United States District Court being, of course, an article III court.

7. 18 U.S.C. § 5031 *et seq.* (1970).

8. *Amicus curiae* brief of the United States Attorney filed herein.

in federal court.[9] The likelihood is that, in such instances, he will already be in federal custody and there being concurrent jurisdiction, there is nothing to impede the federal government from pursuing its processes in federal court. If it should be that the youth is in local custody we see no reason why in these rare instances the local authorities should not accede to this compelling federal interest and deliver the youth to federal control. On these infrequent occasions the Juvenile Court should relinquish its primary jurisdiction.

We do not understand appellee to object to this result. What she does not want is to be processed in the Juvenile Branch of Superior Court when a federal criminal violation is alleged because, says appellee, if she is not handed over to federal authorities she will be denied equal protection of the laws because she will necessarily be deprived of a jury trial—which she claims she would otherwise obtain in federal court.[10] This contention appears to be based upon the proposition that if jurisdiction is concurrent as between the Superior Court and the United States District Court appellee is somehow discriminated against in an unconstitutional sense if she is not proceeded against in the federal court.

We see little to this contention. Appellee says that in other federal jurisdictions those who "opt for treatment as an adult" have the "right of trial by jury." Thus, says appellee, a holding of concurrent jurisdiction would be treating residents of the District of Columbia differently from residents of the 50 states, in violation of the Fifth Amendment.

First of all, we fail to see any invidious discrimination giving rise to a constitutional problem. Different treatment, without more, creates no issue of this dimension, particularly where as here, there is a rational reason for the different treatment. It is true that, as appellee says, under the federal act a juvenile may be tried before a jury as an adult unless he consents to be proceeded against as a juvenile. But unless the concept of the various Juvenile Delinquency Acts is fundamentally wrong this is precisely what should, with exceptions, be avoided. The philosophy of these statutes is to avoid treatment of juveniles as adult criminal defendants to the extent practicable. As a matter of fact, it has been stated that "[t]he child's advocate should search for a plan, or perhaps a range of plans, which may persuade the court that the welfare of the child and the safety of the community can be served without [waiving the child to the adult court for trial]." Haziel v. United States, 131 U.S.App.D.C. 298, 302, 404 F.2d 1275, 1279 (1968). Consequently, barring unusual circumstances, counsel for a juvenile would be on questionable ground to seek trial as an adult simply on the ground that this would afford a jury trial. There are deeper considerations involved than the constitutional worth of a jury trial.[11] We see no denial of equal protection present here.

Since the Juvenile Branch of the Superior Court had jurisdiction in this case, the court erred in dismissing the petition.

Reversed and remanded for further proceedings and a reinstatement of the petition.

---

9. *E. g.*, a multiple defendant situation or perhaps an alleged murder of a federal official.

10. There is a certain inconsistency between this position and her position in respect to her reliance on 18 U.S.C. § 5001, *supra.*

11. Local law of course enables a jury trial if the court in the Juvenile Branch transfers a juvenile over for criminal prosecution. D.C. Code 1973, § 16–2307.