432 A.2d 692 (1981)
In the Matter of L. M., Appellant.
No. 80-63.
District of Columbia Court of Appeals.
Submitted March 25, 1981.
Decided May 4, 1981.[*]
Richard S. Bromberg, Washington, D. C., appointed by the court, was on brief for appellant.
Judith W. Rogers, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Philip T. Vanzile, III, Asst. Corp. Counsel, Washington, D.C., were on brief for appellee.
Before KELLY and FERREN, Associate Judges, and PAIR, Associate Judge, Retired.
*693 PER CURIAM:
Appellant was tried and convicted as a juvenile for smoking on a Metrobus in violation of D.C.Code 1978 Supp., § 44-216(a). Following her conviction, the trial judge placed appellant on probation. Since the inception of this matter, appellant has maintained that the disposition of her case under the juvenile delinquency statutes denies her equal protection because it allows the imposition of "harsher" penalties than the maximum fifty dollar fine applicable to adults convicted under § 44-216.[1] In addition to this equal protection claim, appellant also argues that the trial court should have granted her a judgment of acquittal, first, because there was no showing that appellant was smoking tobacco, and second, because the Metrobus on which the violation occurred was not transporting passengers in regular route service within the corporate limits of the District of Columbia. We reject each of appellant's claims.
Metrobus driver Warren Wimbush testified at trial that appellant and her corespondent were among approximately a dozen passengers boarding the bus at Martin Luther King Avenue and Portland Street, S. E., on March 13, 1979. After making this stop, Mr. Wimbush noticed an increased noise level on the bus and observed that appellant and her corespondent were talking loudly. Looking in his rear view mirror, he saw appellant take a lit cigarette from her mouth and exhale smoke.
Appellant was originally charged with smoking on a Metrobus in violation of D.C. Code 1978 Supp., § 44-216(a), and, along with her corespondent, with drinking on a Metrobus in violation of D.C.Code 1978 Supp., § 44-216(b). The government subsequently added a third count of disorderly conduct, D.C.Code 1973, § 22-1121(5). At trial, the government dismissed the second count alleging drinking on a Metrobus. Following the government's case in chief, the trial court dismissed the count based on disorderly conduct. The defense thereupon presented testimony by appellant and her corespondent alleging that a male passenger gave appellant an unlit marijuana reefer which she held, but did not smoke.
Appellant's equal protection argument is that the difference between the fifty dollar maximum penalty applicable to adult offenders[2] and the conditions of probation imposed on her as a juvenile for the same offense, is not justified by any compelling government interest. This argument is meritless, for differences in the treatment of juvenile offenders are justifiable if the differences are rational. In District of Columbia v. P.L.M., D.C.App., 325 A.2d 600 (1974), this court upheld against an equal protection claim, the refusal to provide a jury at a juvenile delinquency hearing, stating that "[d]ifferent treatment, without more, creates no [invidious discrimination], particularly where as here, there is a rational reason for the different treatment." Id. at 604.
Appellant invokes the strict scrutiny standard of equal protection analysis through alternative contentions that the conditions of her probation affect a fundamental interest and that juveniles constitute a suspect classification. See San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 16-17, 93 S.Ct. 1278, 1287-88, 36 L.Ed.2d 16 (1973). We are unpersuaded by her arguments. First, a general right to absolute liberty is not among the fundamental rights recognized by the Supreme Court for purposes of strict scrutiny analysis under the equal protection clause. See L. Tribe, American Constitutional Law *694 1002-1011 (1978). Moreover, the conditions of appellant's probation curtailed her liberty only to a limited degree. The one year probation required her to obey the law, go to school, remain in the custody of her mother, observe an 8:00 p. m. curfew on weekdays and a 10:00 p. m. curfew on weekends and to stay away from her corespondent. As noted by the trial judge, these were things that "she [was] supposed to do" anyway. We are unable to say that appellant had a fundamental constitutional right to remain free of such restrictions on her liberty.
Nor can we agree that appellant is a member of a suspect class. The notion that classifications based on age, which would include definitions of a juvenile, are suspect, was implicitly rejected in Jefferson v. Hackney, 406 U.S. 535, 549, 92 S.Ct. 1724, 1732, 32 L.Ed.2d 285 (1972). In Jefferson, the Supreme Court held that a state could rationally distinguish between the young and the elderly in providing greater benefits to elderly welfare recipients than to younger recipients of state aid. Since there is no evidence of invidious discrimination in the District's legislative scheme allowing for the imposition of probationary conditions upon a juvenile offender when an adult would be subject to a maximum $50 fine for the same violation, we adhere to our position in P.L.M., supra. In that case we indicated that different treatment of juveniles is justified by a rational relationship between the government interest and the difference in treatment. That rational relationship is based on the strong government interest in determining the treatment required to rehabilitate youthful offenders, see In re C.W.M., D.C.App., 407 A.2d 617, 622 (1979), and in "avoid[ing] treatment of juveniles as adult criminal defendants to the extent practicable." District of Columbia v. P.L.M., supra at 604.
We have previously rejected arguments similar to appellant's in Harvin v. United States, D.C.App., 245 A.2d 307 (1968), aff'd, 144 U.S.App.D.C. 199, 445 F.2d 675 (en banc), cert. denied, 404 U.S. 943, 92 S.Ct. 292, 30 L.Ed.2d 257 (1971). In that case, we stated that "there is no constitutional barrier to sentencing a youth offender to a period of incarceration longer than he lawfully could have received if he were an adult offender convicted of the same offense." Id. at 308-09 (citations omitted). In Harvin, appellant was tried as an adult and then sentenced under the Federal Youth Corrections Act (18 U.S.C. § 5005 et seq. (1976)) which subjected him to up to four years' imprisonment plus two years' probation, while the maximum sentence he could have received if sentenced as an adult offender was six months. Nevertheless, this court, in agreement with the unanimous position of the circuit courts which have been presented with the same issue,[3] upheld the different treatment as justified by the rehabilitative purposes of the Act, recognizing that "it is modern penal philosophy that short sentences for misdemeanors and petty offenses accomplish little for the youthful criminal, or for society, and that effective treatment and rehabilitation of youth offenders require detention for extended periods of time in their most formative years." Id. at 310. See also Austin v. United States, D.C.App., 299 A.2d 545 (1973) (disposition under Youth Corrections Act is not a sentence to imprisonment and is nonpunitive).
Appellant next claims that the court should have granted her a judgment of acquittal because there was no showing that appellant was smoking tobacco. However, § 44-216 prohibits, among other things, the smoking of cigarettes on any bus. The record indicates that the bus driver's testimony was that he saw appellant "take a cigarette . . . out of her mouth." This is sufficient evidence for the trial court *695 to conclude that appellant committed the proscribed act.[4]
Finally, we reject the argument that § 44-216 does not make it a crime to smoke on buses traveling in the District of Columbia with routes terminating outside the District. The statute prohibits smoking on a bus "while said vehicle is transporting passengers in regular route service within the corporate limits of the District of Columbia." Since the evidence clearly established that the appellant boarded the bus in the District and that the violation occurred in the District, appellant cannot claim that because the bus route terminated in Maryland, her conduct did not take place while the bus was "transporting passengers in regular route service within the corporate limits of the District of Columbia." The territorial demarcation contained in the statute merely codifies the rule that the District of Columbia has criminal jurisdiction only over conduct occurring within its boundaries. Accordingly, the judgment on appeal is
Affirmed.
NOTES
[*] The original disposition of this case was by an unpublished Memorandum Opinion and Judgment. Corporation Counsel's motion for publication was granted.
[1] D.C.Code 1978 Supp., § 44-216(a) provides:

It shall be unlawful for passengers or occupants while aboard a public passenger vehicle with a capacity for seating twelve or more passengers, including vehicles owned and/or operated by the Washington Metropolitan Area Transit Authority while said vehicle is transporting passengers in regular route service within the corporate limits of the District of Columbia to:
(a) Smoke or carry a lighted or smoldering pipe, cigar or cigarette in or upon any bus or rail transit car. . . .
[2] D.C.Code 1978 Supp., § 44-218 sets the maximum penalty for first time violations of § 44-216 at $50.
[3] See, e.g., Foston v. United States, 389 F.2d 86 (8th Cir.), cert. denied, 392 U.S. 940, 88 S.Ct. 2319, 20 L.Ed.2d 1401 (1968); Brisco v. United States, 368 F.2d 214 (3rd Cir. 1966); Eller v. United States, 327 F.2d 639 (9th Cir. 1964); Rogers v. United States, 326 F.2d 56 (10th Cir. 1963); Carter v. United States, 113 U.S.App. D.C. 123, 306 F.2d 283 (1962); Cunningham v. United States, 256 F.2d 467 (5th Cir. 1958).
[4] In any case, it would not, in our judgment, make any difference under § 44-216 if appellant was smoking a tobacco cigarette or a marijuana cigarette (reefer).