In the Matter of C. W. M., Appellant.

No. 11349.

District of Columbia Court of Appeals.

Argued May 2, 1979.

Decided Oct. 12, 1979.

**618**

Elkanah J. Burns, Jr., Washington, D. C., appointed by this court, for appellant.

Edward E. Schwab, Asst. Corp. Counsel, Washington, D. C., with whom Louis P. Robbins, Acting Corp. Counsel, Washington, D. C., at the time the brief was filed, Richard W. Barton, Deputy Corp. Counsel, and David Luria, Jr., Asst. Corp. Counsel, Washington, D. C., were on brief, for appellee.

Before GALLAGHER and FERREN, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

This appeal from the adjudication and disposition in a juvenile delinquency proceeding challenges on due process and equal protection grounds the constitutionality of D.C.Code 1973, § 16–2315(d), which prohibits the interposition of the defense of insanity by a child charged with delinquency.[1] We reject the constitutional claim and affirm.

By petition filed December 2, 1975, in the Family Division of the Superior Court, C.W.M., a juvenile, was charged with taking indecent liberties with a child.[2] Finding probable cause to hold C.W.M. for a hearing and because he was at that time on probation for a previous offense, the Division ordered him detained. In this connection the Division, upon request, ordered also that C.W.M. undergo psychiatric examinations to determine his mental capacity to assist in his defense, such examinations to be conducted on an out-patient basis at the designated facility. The examinations continued with periodic reports[3] to the Divi-

---

1. D.C.Code 1973, § 16–2315, provides in pertinent part:

     (a) At any time following the filing of a petition, on motion of the Corporation Counsel or counsel for the child, or on its own motion, the Division may order a child to be examined to aid in determining his . . . mental condition.
     \* \* \* \* \* \*
     (d) The results of an examination under this section shall be admissible in a transfer hearing pursuant to section 16–2307, in a dispositional hearing under this subchapter, or in a commitment proceeding under chapter 5 or 11 of title 21. The results of examination may be admitted into evidence at a factfinding hearing to aid the Division in determining a material allegation of the petition relating to the child's mental or physical condition, but not for the purpose of establishing a defense of insanity.

2. D.C.Code 1973, § 22–3501(a).

3. The medical reports were not made a part of the record and apparently there was no challenge to their content and no request for any additional mental examination prior to the factfinding hearing.

sion until June 21, 1976, when the case was called for a factfinding hearing.

■ At the commencement of the hearing, counsel for C.W.M. announced as a preliminary matter that he would rely upon a defense of insanity and he requested the Division to rule on the constitutionality of D.C.Code 1973, § 16–2315(d), which bars such defense in juvenile delinquency proceedings.[4] Observing that no written motion[5] was before the Division, it was explained that the statute provides a special treatment for the mentally ill juvenile offender equivalent to the insanity defense. It was also pointed out that the Division was possessed of broad discretionary power to make a disposition of any such offender as would best serve his interests. Accordingly, the Division ruled that the defense would not be permitted. At the conclusion of the factfinding hearing that followed, C.W.M. was found guilty as charged.

Preparatory to making a disposition, the Division again on request, committed C.W.M. for a mental evaluation and directed that a report be made within 30 days. Based upon that report and upon other considerations, the Division on September 17, 1976, placed C.W.M. on probation for one year on the condition, among others, that he enroll and participate on an out-patient basis in a psychiatric program at St. Elizabeths Hospital.[6] This appeal by C.W.M.

(appellant) challenging the constitutionality of D.C.Code 1973, § 16–2315(d) followed.[7]

Appellant urges that because of the statutory prohibition, he was deprived of the opportunity, available to any adult criminal defendant, to obtain acquittal by showing that he did not at the time of the commission of the offense possess the requisite intent. More specifically, he says at page 9 of his brief:

> It is clear that proof of the requisite intent is necessary to obtain an adult conviction and that insanity precludes such proof as the actor would not have had the necessary capacity to form that intent. Hence if an adult could not be convicted absent proof of intent, neither should a juvenile.

By this argument, appellant demonstrates a misconception of the nature and purpose of the insanity defense, for there is a fundamental difference between the concept of *mens rea* and the insanity defense. *See Bethea v. United States*, D.C.App., 365 A.2d 64, 87–95 (1976), *cert. denied*, 433 U.S. 911, 97 S.Ct. 2979, 53 L.Ed.2d 1095 (1977).

■ Moreover, it is well settled in this jurisdiction that proof of insanity at the time of the commission of an offense does not negate intent nor, without more, does it require an outright acquittal, *United States v. Tyler*, D.C.App., 376 A.2d 798 (1977), *ap-*

---

4.  D.C.Code 1973, § 24–301(c), indicates that a juvenile does have the right to raise an insanity defense. Although Congress did not expressly repeal this section, it repealed the section by implication when it enacted § 16–2315. *See Proposed Amendments to the Juvenile Court Proceedings Bill: Hearings on S–2981 Before the Senate Committee on the District of Columbia*, 91st Cong., 1st Sess. 1807–08, 1834, 1841 (1969).

5.  Super.Ct.Juv.R. 12(a), (b)(2).

6.  D.C.Code 1973, § 16–2320(c)(3).

7.  On October 5, 1978, appellant initially submitted this appeal without oral argument. However, on January 30, 1978, this court, sua sponte, ordered the parties to file briefs on the following questions:

(1) The government argues that D.C.Code 1973, § 16–2315(d), precludes the defense of insanity in a juvenile proceeding. Does D.C. Code 1973, § 24–301(c), suggest otherwise, limiting § 16–2315(d) to evidentiary use of a particular mental examination?
(2) If the insanity defense were available to a juvenile, what would be the consequences, if any, that differ from those if the defense is not available? *E. g.*, in terms of treatment (has Congress, in depriving juveniles of the defense of insanity, provided a suitable and effective alternative remedy)? In terms of the juvenile's record (would a finding of "not involved by reason of insanity" be an advantage to the juvenile)?
(3) How does *State v. Causey*, 363 So.2d 472 (La.1978), bear on the analysis under District of Columbia law and the Constitution?

*peal dismissed en banc,* 392 A.2d 511 (1978),[8] since the trier of fact may not even consider the issue of insanity until after the government has established the essential elements of the offense, including intent. *Bethea v. United States, supra* at 93–95.

Consequently, even if the defense of insanity had been permitted and appellant had been successful in obtaining an acquittal by reason of insanity, it would not have established his innocence of the charged offense because "[a]n acquittal by reason of insanity, which . . . includes mental defects, is a determination of guilt beyond a reasonable doubt of the acts charged." *United States v. Shorter,* D.C.App., 343 A.2d 569, 570 n.2 (1975) (citations omitted). *See also United States v. Brown,* 155 U.S. App.D.C. 402, 406, 478 F.2d 606, 610 (1973).

Thus, the function of the insanity defense is not to establish the innocence of the accused, but rather to absolve him of the moral and penal consequences of his criminal act. *Bethea v. United States, supra; United States v. Shorter, supra.*

Insisting, however, that D.C.Code 1973, § 16–2315(d) violates the Fifth Amendment guarantees of due process and equal protection, appellant urges that because the statute precludes a child from raising the insanity defense at the factfinding hearing, he or she is afforded less protection than that afforded an adult offender who is found to have been insane at the time of the commission of the offense. Put another way, appellant says that an adult acquitted by reason of insanity is by law, D.C.Code 1973, § 24–301(d), committed to a mental institution, but only until such time as he is able to establish his sanity. In contrast, urges appellant, under existing law a child who was insane at the time of the commission of an offense but not at the time of the disposition hearing could nevertheless be incarcerated in a setting where psychiatric care is not available. We will presently dispose of each of these claims.

At the outset, we notice that the Supreme Court has sanctioned great flexibility in juvenile delinquency proceedings to the end that the unique rehabilitative function of the juvenile system may be preserved. *See* Popkin & Lippert, *Is There A Constitutional Right to the Insanity Defense in Juvenile Court?,* 10 J.Fam.L. 421, 434 (1971). Of course, it has always been recognized that any child involved in a delinquency proceeding has the right to due process and equal protection of the law. Over the past 13 years, the Supreme Court has made this clear by extending to child offenders numerous procedural safeguards accorded adult offenders: For example, the right to counsel, to notice of the charges against them, and to confrontation and cross-examination; the privilege against self-incrimination; and the right to be judged by the standard of proof beyond a reasonable doubt. *See McKeiver v. Pennsylvania,* 403 U.S. 528, 533, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *cf. Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

The Court, however, has repeatedly declined to rule that a juvenile delinquency proceeding must conform to all the requirements of a criminal trial. It has been deemed enough that the proceeding "measure up to the essential of due process and fair treatment." *McKeiver, supra* 403 U.S. at 534, 91 S.Ct. at 1980, 1981; *In re Gault, supra* 387 U.S. at 30, 87 S.Ct. 1428; *Kent, supra* 383 U.S. at 562, 86 S.Ct. 1045. Thus, although the Court had decided that the right to a jury trial was an element of fundamental fairness in an adult proceeding, *Duncan v. Louisiana,* 391 U.S. 145, 157–58, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), it held in *McKeiver, supra,* that trial by jury was not constitutionally required in a delin-

---

Following submission of the supplemental briefs, oral argument was held on May 2, 1979.

8. This rationale is not affected by our recent en banc decision in *United States v. Tyler, supra,* that a directed verdict of not guilty by reason

of insanity is equivalent to an acquittal on the merits for double jeopardy purposes. *See Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

quency proceeding. In so holding, the Court stated again that juveniles are not entitled to every due process right available to the criminal defendant.

■ The Court's analysis in *McKeiver* is particularly instructive in this case. The Court there began with the proposition that fundamental fairness is the applicable due process standard in juvenile proceedings. It observed that in applying this standard in *Gault* and *Winship*, its central focus was on the impact that the asserted right would have on the factfinding process by which a child is adjudicated a delinquent. See *McKeiver, supra* 403 U.S. at 543, 91 S.Ct. 1976. Then, dealing with the specific issue before it, the Court examined the *function* that the jury served in the factfinding process. Ultimately, it concluded that, unlike the functions performed in the exercise of the other rights guaranteed juveniles by *Gault* and *Winship*, the right to trial by jury was not a necessary component of accurate factfinding. The Court explained that there are numerous other acceptable ways of determining facts. See *id.* When we apply a similar approach in the case before us, we find that the central question is whether the insanity defense serves some function essential to fundamental fairness that cannot otherwise be performed adequately by other procedures in the juvenile system.

■ With this question in mind, we proceed to examine appellant's constitutional arguments, mindful in the process that the very purpose of D.C.Code 1973, §§ 16–2301 et seq., is "to avoid treatment of juveniles as adult criminal defendants to the extent practicable." *District of Columbia v. P.L.M.,* D.C.App., 325 A.2d 600, 604 (1974). Mindful also, we must be, that it is implicit in the statutory scheme that noncriminal treatment is to be the rule, and adult treatment the exception. *Black v. United States,* 122 U.S.App.D.C. 393, 355 F.2d 104 (1965).

That there are substantial differences between the criminal and juvenile justice systems is of course apparent from an examination of the controlling statutes. See and compare D.C.Code 1973, § 24–301, and D.C. Code 1973, § 16–2301, et seq.[9] However, the relevant differences come into focus only after completion of the first phase of the bifurcated proceedings conducted in this jurisdiction when a criminal defendant interposes the defense of insanity.

In a criminal case, the trier of fact may not even consider the issue of insanity until the government has established the essential elements of the offense, including intent in the first phase of that proceeding. The second phase is held only if the government is successful in proving guilt beyond a reasonable doubt and, only then, may the trier of fact reach the question of insanity. See *Bethea, supra* at 93–95; *United States v. Shorter, supra* at 571. See also *United States v. Brown,* 155 U.S.App.D.C. 402, 406, 478 F.2d 606, 610 (1973). At this point, a criminal defendant may raise an insanity defense, which serves to permit the jury to decide whether the criminal defendant should be absolved of the criminal responsibility and penal consequences of his acts. *Tyler, supra* at 803; *Bethea, supra; United States v. Shorter, supra.*[10]

---

9. The intent of the draftsmen of D.C.Code 1973, § 16–2315(d), appears in the report of the hearings on proposed amendments as follows:

We have also provided for limited use of the results of mental examinations, most specifically prohibiting the insanity defense in juvenile proceedings. Not only should the insanity defense not be permitted in juvenile cases where the goal is to rehabilitate a child if at all possible but allowing the defense would involve the Family Division in technical arguments unrelated to the questions whether or not the child did the act and what should be done in his best interests. It is at the time of disposition, if at all, that the results of the examination would be relevant. This is an important difference between juvenile and adult criminal proceedings since the latter does not distinguish between the adjudication of facts and disposition. [*Hearings on S. 2981* at 1808 (statement of Donald E. Santarelli), *supra* note 4, at 2.]

10. Although a juvenile may not use the insanity defense at the factfinding hearing to negate intent, D.C.Code 1973, § 16–2315(d) does permit the Division to consider a mental examination report as evidence "to aid the Division in determining a material allegation of the peti-

The first phase of a bifurcated criminal proceeding is analogous to the factfinding proceeding of the juvenile process during which the Division is permitted to determine only whether the juvenile committed the act charged. Accordingly, contrary to appellant's argument, precluding a juvenile from raising an insanity defense at a factfinding hearing denies him no right that is otherwise accorded an adult.[11]

■ A juvenile delinquency proceeding concededly does not incorporate the second step. Nevertheless, it is well settled now that unlike a criminal trial a juvenile factfinding hearing does not result in a determination of criminal responsibility. *See Kent v. United States,* 383 U.S. 541, 554, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). *See also McKeiver, supra; District of Columbia v. M.E.H.,* D.C.App., 312 A.2d 561, 562 (1973); *Black v. United States, supra; Pee v. United States,* 107 U.S.App.D.C. 47, 274 F.2d 556 (1959). Nor is the succeeding dispositional hearing intended to result in the imposition of any penal sanction on the child. Rather, the purpose is to determine the treatment required to rehabilitate him. Accordingly, the insanity defense would be superfluous in a juvenile delinquency proceeding.

This conclusion, however, does not end our analysis. Appellant contends that the insanity defense in a criminal proceeding serves the secondary, but equally important

purpose of providing a criminal defendant with procedural safeguards not otherwise available to a child. He concedes however that an adult offender found not guilty by reason of insanity must be committed to a hospital for the mentally ill until such time as he is able to establish his eligibility for release as provided in D.C.Code 1973, § 24–301(d). *See Bethea, supra* at 90 n. 58, 92; *United States v. Jackson,* 179 U.S.App.D.C. 375, 383–85, 553 F.2d 109, 117–19 (1976). In contrast, appellant maintains that D.C.Code 1973, § 16–2315(d) does not require the Family Division to consider the result of any mental examination or make specific findings respecting a child's mental illness. Because of the broad discretion vested in the Division for dispositional purposes, appellant contends, as a possibility, that a child who was mentally ill at the time of the offense, but not at the time of disposition, could be "incarcerated for a lengthy period as an adjudicated delinquent," and that a child who was still mentally ill at the time of disposition could be institutionalized in a setting where psychiatric care is not available. We have found no support in the statute for these contentions.

■ We recognize that although the juvenile justice system is not intended to impose penal sanctions, the Family Division frequently orders forms of rehabilitation that a child might regard as punishment.[12]

---

tion relating to the child's mental condition." Thus, the Division may consider a child's mental condition at the factfinding hearing. An adult criminal is, of course, not accorded the same right in the first phase of a bifurcated proceeding.

11. The United States Court of Appeals for the District of Columbia Circuit explained the purpose and function of the insanity defense as follows:

One of the major foundations for the structure of the criminal law is the concept of responsibility, and the law is clear that one whose acts would otherwise be criminal has committed no crime at all if because of incapacity due to age or mental condition he is not responsible for those acts. If he does not know what he is doing or cannot control his conduct or his acts are the product of a mental disease or defect, he is morally blameless and not criminally responsible. The

judgment of society and the law in this respect is tested in any given case by an inquiry into the sanity of the accused. In other words, the legal definition of insanity in a criminal case is a codification of the moral judgment of society as respects a man's criminal responsibility; and if a man is insane in the eyes of the law, he is blameless in the eyes of society and is not subject to punishment in the criminal courts. [*Whalem v. United States,* 120 U.S.App.D.C. 331, 337, 346 F.2d 812, 818, *cert. denied,* 382 U.S. 862, 86 S.Ct. 124, 15 L.Ed.2d 100 (1965) (footnote omitted).]

12. The Supreme Court stated in *Gault, supra* 387 U.S. at 27, 87 S.Ct. at 1443:

Ultimately, however, we confront the reality of that portion of the Juvenile Court process with which we deal in this case. A boy is charged with misconduct. The boy is committed to an institution where he may be

We also recognized that an insanity acquittee, because morally blameless, may not be subject to any form of punishment. *Whalem v. United States, supra,* 120 U.S.App. D.C. at 335, 346 F.2d at 816. Of course, as pointed out above, an adjudication of delinquency does not result in the imposition of any penal sanction. *District of Columbia v. M.E.H., supra.* Consequently it cannot be said with rationality that a disposition of a child offender deemed, by the Division, to serve his best interests, is punishment. Nevertheless we deem it to be an indispensable element of fundamental fairness that a mentally ill child offender be accorded the same opportunity for psychiatric treatment and ultimate release as a similarly situated adult. For these reasons, we have examined closely the statutory scheme, D.C.Code 1973, §§ 16–2315 *et seq.,* governing the treatment of mentally ill child offenders in order to determine whether they are being denied any required procedural protections to ensure fundamental fairness. We conclude that the statutes and rules regulating juvenile delinquency proceedings in the District of Columbia presently provide adequate means of ensuring that any mentally ill child offender receives care and treatment similar to that provided for mentally ill criminal defendants.[13]

We note in this connection that § 16–2315(d) provides that the results of any mental examination "shall be admissible" in a dispositional hearing. Appellant asserts that this section is permissive, giving the court broad discretion to ignore the predis-

position report if it chooses. He maintains, moreover, that the judge is not required to make findings respecting the mental health of the child involved at the time of the offense or at the dispositional hearing, suggesting, we presume, that absent such findings, this court is unable to review the Family Division's consideration of the reports.

█ We cannot agree with appellant's interpretation of the statute and the rules governing juvenile delinquency proceedings. We hold that the Division *must* consider, at the dispositional hearing the mental health of the child at the time of the offense, as well as at the time of such hearing.

In so holding, we are influenced by § 16–2319, which provides that after the factfinding hearing,

> the Division *shall direct* that a predispositional study and report to the Division be made by the Director of Social Services or a qualified agency designated by the Division concerning the child, his family, his environment, *and other matters relevant to the need for treatment or disposition of the case.* (Emphasis added.)

In addition, Super.Ct.Juv.R. 32(c)(2) requires that the predisposition report

> shall contain any prior juvenile record of the respondent and such information about his characteristics, his family, his environment and *the circumstances affecting his behavior* as may be helpful in determining the need for treatment and a

---

restrained of liberty for years. It is of no constitutional consequence—and of limited practical meaning—that the institution to which he is committed is called an Industrial School. The fact of the matter is that, however euphemistic the title, a "receiving home" or an "industrial school" for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time. His world becomes "a building with whitewashed walls, regimented routine and institutional hours . . . ." Instead of mother and father and sisters and brothers and friends and classmates, his world is peopled by guards, custodians, state employees, and "delinquents" confined with him for anything from waywardness to rape and homicide. [Footnotes omitted.]

*See Winship, supra,* 397 U.S. at 365–66, 90 S.Ct. 1068.

13. For example, by D.C.Code 1973, § 16–2320(a)(4), the Division is authorized to order "Commitment of the child for medical, psychiatric, or other treatment at an appropriate facility on an in-patient basis if, at the dispositional hearing . . . the Division finds that confinement is necessary to the treatment of the child." Any such child "may petition the Division for review of the order thirty days after treatment . . . has commenced, and, if, after a hearing . . . the original order is affirmed, the child may petition for review thereafter every six months."

proper disposition of the case. (Emphasis added.)

In our view, these provisions clearly mandate that a predisposition report contain information relating to the child's mental state at the time of the offense and also at the time of the disposition hearing to enable the Division to determine whether, as a result of mental illness, the child "lacked substantial capacity either to recognize the wrongfulness of his conduct or to conform his conduct to the requirements of law." *Bethea, supra* at 79. These considerations would be highly relevant to the need for treatment and a proper disposition of the case.[14]

Because of the specific requirement that the Division order a predisposition report containing specific information, it follows logically that the Division is required to consider the results of the report and that failure to do so would constitute an abuse of discretion. To conclude otherwise would require a presumption that Congress mandated the Division to do a useless act—to order a report that the judge need not read. Since this court can properly review the exercise of discretion only when findings are made with regard to the child's mental health and its relation to the offense charged, we hold that in the future, the Division must make specific findings on

these questions.[15] In the case at bar, the Division determined more than two years ago that appellant was no longer in need of care, treatment, or rehabilitation, having complied with the terms of his probation. Thus, a remand at this time for an inquiry and findings regarding appellant's mental condition at the time of the offense and at disposition would serve only as an exercise in futility.

We turn now to the question whether the juvenile justice system required the Division to treat a child whose offense was the product of a mental illness in a manner less fair than that of an adult in a similar situation.

■ It seems clear from what we have said above that if the Division finds that the child offender was mentally ill at the time of the offense, and is mentally ill at the time of disposition and therefore in need of care and treatment, certainly it would be a clear abuse of discretion to then confine the child to an institution where appropriate care and treatment was not available. Any other result would be wholly inconsistent with the primary goal of the juvenile justice system, *i. e.*, to order the disposition that would serve the best interest of the child in effecting his rehabilitation.[16]

---

**14.** The judge in this case apparently recognized the significance of such considerations in determining the disposition to be made. After finding that the respondent had committed the act charged, he ordered that a predisposition report be prepared, stating:

> I want a report on two things. Number one, is he mentally ill? Was this crime, which the Court has found him guilty of a result of his mental illness. A third thing, does he constitute a danger to himself or others by reason of his mental illness.

**15.** In many circumstances, findings respecting a child's mental health are already mandated by the rules. Super.Ct.Juv.R. 32(b) requires that the judgment shall include the predispositional order setting out "a statement of reasons" why "placement of a child outside his home, in an institution or elsewhere" is necessary. The rule explains, furthermore, that the judgment must state if the respondent is guilty "or for any other reason is entitled to be discharged." In accordance with the rule, if the judge finds that a child is presently in need of

treatment in a mental health care institution, he must explain his reasons for reaching that conclusion. The same result is mandated if the judge conclude that, despite evidence of mental illness in the report, the child should be sent to an institution where he or she would not be provided with psychiatric care. Finally, the requirement in the rule that the judgment must state any other reason that the child is entitled to a discharge would apparently require a judge to state, in appropriate circumstances, that the offense was the result of that illness, and that the child is entitled to release because no longer mentally ill or in need of care, treatment, or supervision.

**16.** The Division has broad discretion to order the treatment it deems to be in the child's best interest. To this end the Division may either before or after the factfinding hearing order that the child be subjected to a mental examination. D.C.Code 1973, § 16–2315(a). If it appears from the examination that the juvenile is incompetent to participate in the proceed-

On the other hand, if the Division finds that the child was mentally ill at the time of the offense, but at the time of disposition was fully restored to mental health, the Division would then be required to determine whether in view of all the facts and circumstances the child is or is not in need of care and treatment. *See* D.C.Code 1973, § 16–2317(c). Of particular significance, however, is § 16–2317(d) which provides that:

> If the Division finds that the child is not in need of care or rehabilitation it shall terminate the proceedings and discharge the child from detention, shelter care, or other restriction previously ordered.

In summary, we conclude, after our careful analysis of the statute and the rules governing the juvenile justice system in the District of Columbia, that the child here involved was accorded treatment that was substantially similar—and in some respects more beneficial—than that accorded a similarly situated criminal defendant. *Compare* D.C.Code 1973, § 24–301(a) *with* D.C.Code 1973, § 16–2315 *et seq.*

Because fundamental fairness in juvenile delinquency proceedings is of the very essence of due process, which encompasses equal protection of law,[17] the different treatment provided by our statute for juveniles does no violence to either. *Fitzgerald v. Hampton*, 152 U.S.App.D.C. 1, 9–10, 467 F.2d 755, 763–64 (1972); *Lapides v. Clark*, 85 U.S.App.D.C. 101, 102, 176 F.2d 619, 620, *cert. denied*, 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527 (1949).[18]

We hold, therefore, that the demands of the due process and equal protection clauses were fully satisfied in this case by proceedings pursuant to D.C.Code 1973, § 16–2315, which were fundamentally fair.[19] *McKeiv-*

---

ings, the Division must suspend further proceedings and the Corporation Counsel shall, as provided in § 16–2315(c)(1) "initiate commitment proceedings. . . ." If, after the fact-finding hearing, the child is adjudicated a delinquent and it is determined also that he is mentally ill, the Division may as provided in D.C. Code 1973, § 16–2320(a)(4), order commitment to an appropriate facility for medical, psychiatric, or other treatment, or direct, pursuant to § 16–2321(b), the appropriate authority to initiate civil commitment proceedings.

If the proceedings do not result in commitment for medical or psychiatric treatment, the Division must proceed as provided in § 16–2321(c) to a disposition deemed to serve the child's best interest. *See In re Elmore*, 127 U.S.App.D.C. 176, 382 F.2d 125 (1967). For instance, in the case at bar the child was placed on probation for one year, conditioned upon out-patient psychiatric treatment from a home setting.

17. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

18. Appellant also argues that because a juvenile, unlike a criminal defendant, cannot be adjudged "not guilty by reason of insanity," the juvenile must bear a stigma that an adult would not. It is true that despite elaborate procedures designed to assure that a juvenile's delinquency records are not widely disseminated and to prevent him from suffering any civil disabilities as a result of his misconduct, the juvenile may be stigmatized by a finding of delinquency. *Gault, supra* 387 U.S. at 24–25, 87 S.Ct. 1428.

Such adjudication, for example, sometimes can be disclosed for purposes of impeaching the juvenile in a criminal proceeding against someone else. *See Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Lewis v. United States*, D.C.App., 393 A.2d 109 (1978), *aff'd on rehearing*, D.C.App., 408 A.2d 303 (1979); *Smith v. United States*, D.C.App., 392 A.2d 990 (1978). On the other hand, even with the insanity defense there is a finding that the accused committed the act charged beyond a reasonable doubt. *See Bethea, supra.* Thus, by successfully raising an insanity defense the juvenile might be "twice cursed." *Matthews v. Hardy*, 137 U.S.App.D.C. 39, 42–43, 420 F.2d 607, 610–11 (1969), *cert. denied*, 397 U.S. 1010, 90 S.Ct. 1231, 25 L.Ed.2d 423 (1970). Accordingly, we do not perceive a benefit to juveniles from the insanity defense that would render the statutory scheme unconstitutional.

19. *See* in this connection, *In re H.C.*, 106 N.J. Super. 583, 256 A.2d 322 (1969). *Cf. In re M.G.S.*, 267 Cal.App.2d 329, 72 Cal.Rptr. 808 (1968). We have read with interest *In re Causey*, La., 363 So.2d 472 (1978), which held that the due process clause accords a juvenile the right to plead not guilty by reason of insanity, but we are not persuaded by its reasoning. In reaching its decision, the Louisiana Supreme Court emphasized cases holding that "the denial of the right to plead insanity *with no alternative means of exculpation or special treatment for an insane person*" violates due process. *Id.* at 474. As explained at length above, this rationale has no bearing on juvenile proceed-

*er v. Pennsylvania, supra.* Satisfied that there is no constitutional infirmity in D.C. Code 1973, § 16–2315(d) and that there was none in the juvenile delinquency proceedings, we affirm.

*So Ordered.*

FERREN, Associate Judge, concurring:

I concur in Judge Pair's opinion for the court but wish to add a few words of clarification about a critical point. The opinion states *ante* at 625:

> [I]f the Division finds that the child was mentally ill at the time of the offense, but at the time of disposition was fully restored to mental health, the Division would then be required to determine whether in view of all the facts and circumstances the child is or is not in need of care and treatment. *See* D.C.Code 1973, § 16–2317(c). Of particular significance, however, is § 16–2317(d), which provides that:
>
> > If the Division finds that the child is not in need of care or rehabilitation it shall terminate the proceedings and discharge the child from detention, shelter care, or other restriction previously ordered.

Consistent with the statute and due process, if the child "at the time of disposition was fully restored to mental health," there can be no basis under § 16–2317(d) for finding that the child is "in need of care or rehabilitation" for the offense charged. In such event, the Family Division will have to "terminate the proceedings and discharge the child . . . ." *Id.*

ings in this jurisdiction. In the District of Columbia a finding of not guilty by reason of insanity is not equivalent to a determination of innocence or an acquittal. Moreover, although a juvenile cannot raise an insanity defense, the Division must consider evidence of mental illness in making its disposition and can thus insure special treatment for the mentally ill juvenile. (Emphasis added.)