602 A.2d 109 (1992)
In the Matter of M.D., V.G., Appellant.
No. 91-106.
District of Columbia Court of Appeals.
Argued December 16, 1991.
Decided January 3, 1992.
*110 Al J. Gonzales, for appellant father V.G.
Suzanne H. Jackson, for appellee mother A.D.
John J. Connelly, guardian ad litem, for appellee child M.D.
Edward E. Schwab, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel and Robert J. Harlan, Jr., Asst. Corp. Counsel of the District of Columbia, for appellee.
Before ROGERS, Chief Judge, and FERREN, Associate Judge, and MACK, Senior Judge.
ROGERS, Chief Judge:
In this appeal, appellant V.G., the natural father of a minor child, M.D., appeals from the order of January 17, 1991, denying him visitation. After denying appellant's motion to dismiss the neglect case, and finding pursuant to the parents' stipulation that the child was neglected, the trial judge ordered that the conditions of a civil protection order entered June 29, 1990, in a companion intrafamily offense case, would continue to apply for one year, whereby the father would not be allowed any visitation with his child.[1] Tr. 19. Appellant contends that the trial judge abused his discretion by failing to find that visitation would harm the child, by relying on, without reviewing the findings of, a civil protection order based on a lower standard of proof, and by failing to consider relevant information in the form of a psychiatric evaluation of appellant. Because the trial judge failed to read the psychiatric evaluation which challenged *111 the recommendation in the predisposition report against visitation, and failed to read the findings underlying the civil protection order on which he relied and which appellant challenged, we hold that the trial judge abused his discretion, and we reverse.

I
M.D. was born to A.D., the mother, and V.G., the father, on April 30, 1990.[2] On May 30, 1990, the baby boy was admitted to the Children's Hospital suffering from a parietal "hematoma to the left side of the temple." [R. 12] A police report indicated that when appellant had tried to hit the child's mother he had accidentally hit the child. [R. 12] A neglect petition was filed on May 31, 1990 [R. 7], and following a shelter care order, the child was later conditionally released to the mother on July 2, 1990. [R. 18, 19]
In the intrafamily proceeding, Judge Margaret Haywood entered a civil protection order on June 29, 1990, directing that appellant stay away from the child, the mother and her family, pay child support, and participate in an alcohol rehabilitation program "if indicated after an evaluation by the Director of Social Services." [R. 30] Further, the civil protection order stated that appellant shall have no visitation rights unless ordered by the judge in the neglect case. [R. 30]
In the neglect proceeding before Judge Wolf, the judge's finding of neglect was made pursuant to a stipulation by the mother and father agreeing that the child's injury was the result of a "domestic altercation," eliminating reference to appellant as the sole cause of the injury, and that the court should assume jurisdiction over the child as a neglected child.[3] [R. 38] Further, in that stipulation, appellant agreed to abide by the conditions of the civil protection order entered on June 29, 1990. [R. 37]
At the disposition proceeding on January 17, 1991, Judge Wolf noted that the predisposition report recommended that the child remain in the custody of the mother.[4] Tr. 3. All parties[5] except appellant and his counsel agreed that it was in the best interests of the child for the conditions of the civil protection order, entered by Judge Haywood in the intrafamily proceeding, to remain in effect.[6] Tr. 21. The predisposition report, dated December 3, 1990, recommended that the child remain with the mother and that the father receive "psychotherapeutic assessment and treatment." [Rpt. at 6]
When Judge Wolf inquired whether appellant wanted to show the court, by participating in counseling, that he should be given permission for visitation, appellant's counsel stated that his client did not think he needed counseling. In support of his position, appellant's counsel referred the judge to a six-page report regarding a psychiatric evaluation of appellant by Dr. Jesus Saavedra on December 8 & 15, 1990, which stated that appellant was in good mental health and did not indicate any evidence of alcoholism. Appellant's counsel, noting that he had brought to the judge's chambers the transcript of the intrafamily proceeding before Judge Haywood, stated that the transcript of the intrafamily proceeding indicated that the mother's testimony was contrary to the parents' stipulation regarding the cause of the injury to the child. Hence, appellant's counsel stated, if Judge Wolf were inclined to use that transcript, *112 then the judge should review it carefully before relying on the findings in the intrafamily proceeding, which involved a lesser standard of proof than in neglect proceedings, in order to determine whether there had been perjured testimony. Tr. 5.
The trial judge admitted during a colloquy with appellant's counsel that he had not read the psychiatric evaluation. Tr. 4. Nor had the judge read the transcript of the intrafamily proceeding, although he noted regret that he had not had a chance to do so. Tr. 4. In view of the fact that the judge had not read the psychiatric report, appellant's counsel requested a specific finding on the father's visitation rights if the judge was "going to act on [the probation officer's] recommendations without having read the [psychiatrist's] report." Tr. 11. The trial judge indicated that he would recess and read the report if he needed to. Tr. 12. The guardian ad litem for the child advised the judge that the two reportsthe psychiatric evaluation and the predisposition reportdiffered on appellant's need for therapy and counseling. Tr. 8. A probation officer who was present advised the judge that Dr. Saavedra had made two statements, one orally to her indicating that he had found "post-traumatic stress symptomatology and he felt that [appellant] really did need psychotherapy," Tr. 8-10. and a second, in his six-page written report, that the "post-traumatic stress symptomatology is in remission and... that although [appellant] might be in need of some counseling, he does not necessarily need psychotherapy."[7] Tr. 9. Appellant's counsel responded that during his (at least) four discussions with Dr. Saavedra, the doctor had not retreated from the position in his signed report. Tr. 10.
Nevertheless, despite the apparent ambiguity about Dr. Saavedra's ultimate diagnosis and recommendations, the trial judge proceeded, without a recess to read the psychiatric evaluation, to order a disposition continuing the terms and conditions of the civil protection order of June 29, 1990. Tr. 19. The trial judge stated that "the primary interests of the child are my concern," Tr. 7 and that based on Judge Haywood's finding [in the intrafamily proceeding] there will not be visitation and the child support will continue." Tr. 19. The trial judge indicated that he considered the civil protection order entered by Judge Haywood still to be in effect, and would not change the stay away order "until some motion, for example, is filed to discharge it. Accordingly, visitation will not be permitted." Tr. 19.

II
It has long been recognized in this jurisdiction that When custody of children has been awarded to one parent, the parent deprived of their custody has the right of visitation with the children and ought not to be denied that right unless by his conduct he has forfeited his right, or unless the exercise of the right would injuriously affect the welfare of the children. `The right of visitation is an important, natural and legal right, although it is not an absolute right, but is one which must yield to the good of the child.' 2 NELSON, DIVORCE AND ANNULMENT, § 15.26 (2d ed. 1945). The right of access to one's child `should not be denied unless the chancellor is convinced that such visitations are detrimental to the best interests of the infant." Townsend v. Townsend, 205 Md. 591, 109 A.2d 765, 768.
Surrey v. Surrey, 144 A.2d 421, 423 (D.C. 1958) (emphasis added).
In arriving at a decision regarding visitation, the trial court is to be assisted by a predisposition report. D.C.Code § 16-2319 provides that after a determination has been made that a child is neglected, the *113 Family Division "shall direct that a predisposition study and report to the Division be made by the Director of Social Services or a qualified agency designated by the [Family] Division concerning the child, his family, his environment, and other matters relevant to the need for treatment or disposition of the case." Further, the statute provides that "if the removal of the child from his parent ... is recommended, the report shall also include: * * * (D) the plans for maintaining contact between the parent and child through visitation rights in order to maximize the parent-child relationship consistent with the well-being of the child." D.C.Code § 16-2319(c)(2)(D). Interpreting this provision in a juvenile delinquency case, the court stated that:
Because of the specific requirement that the [Family] Division order a predisposition report containing specific information, it follows logically that the Division is required to consider the results of the report and that failure to do so would constitute an abuse of discretion. To conclude otherwise would require a presumption that Congress mandated the Division to do a useless actto order a report that the judge need not read. * * * * [W]e hold that in the future the Division must make specific findings on these questions.

Matter of C.W.M., 407 A.2d 617, 624 (D.C.1979). Although the court's reference to "these questions" related to the child's mental health in C.W.M., the holding is no less appropriate in a neglect proceeding when the major issue is whether the father needs counseling before being allowed visitation with his child.
The government notes that the evidence before the trial judge to support the disposition denying any visitation included a history of hostility between the parents, the father's failure to agree to counseling, the fact that a civil protection order was required, and appellant's agreement in the stipulation to abide by the conditions of that order. [Br. at 3] There also were the mother's assertions that the father, in violation of the conditions of the civil protection order, had been harassing and threatening her sister. Tr. 15. But these allegations were disputed by appellant's counsel who asserted that appellant had been harassed on numerous occasions and was ready to subpoena witnesses to support appellant's version of events.[8] Tr. 17-18. Indeed, the predisposition report noted appellant's complaints.[9] Counsel further argued that appellant had undergone a psychiatric evaluation in accordance with the civil protection order, and that the evaluation did not indicate that appellant had a problem with alcohol or needed psychiatric counseling.[10] Tr. 16. Counsel also had provided the trial judge with the transcripts of the intrafamily proceeding.
The trial judge was properly concerned about the safety of the child in view of the evidence of the father's poor relationship with the child's mother and the resulting injury to the child in May 1990. The predisposition report indicated that appellant had been "observed to be intoxicated" at the time of the child's injury. [Rept. 2] The father's refusal to undergo counseling was an understandable concern of the probation officer and trial judge in view of what might happen were visitation allowed without a prior evaluation of the father. The problem, however, is that the trial judge relied on his concern about the father's need for counseling as the basis for denying visitation without reaching an independent legal conclusion based on factual findings in light of the evidence before him.
*114 First, the civil protection order entered by Judge Haywood made clear by its terms that it remained for the trial judge in the neglect case to determine whether or not appellant should be allowed visitation. Hence, the trial judge's apparent view that the visitation issue might be academic was incorrect not only because Judge Haywood's order in the intrafamily proceeding did not itself preclude such a determination, but because the statute places an independent responsibility on the trial judge in the neglect proceeding to determine the best interests of the child.[11]See C.W.M., supra, 407 A.2d at 624.
Second, the trial judge could not properly rely on the terms of the civil protection order in the absence of an examination of the challenges raised by appellant to the findings underlying the order. Although the trial judge had the transcript of the proceeding before Judge Haywood, he did not review it. Hence, his statement that he was relying on Judge Haywood's "findings" can only be interpreted to mean that the trial judge accepted the civil protection order on its face, that is, he assumed that there were findings to support the order. Yet in view of the parents' stipulation, entered into after the civil protection order, indicating that they both accepted responsibility for the child's injury, the trial judge could not properly accept uncritically the apparent underlying premise of the civil protection order, namely, that the harm to the child had been caused by the father.[12]
Third, even if the trial judge could properly take the civil protection order at face value, he still had to determine whether appellant's right of visitation should be denied because it would be detrimental to the best interests of the child. Surrey v. Surrey, supra, 144 A.2d at 423. The statutory scheme presumes that contact with both parents is normally in the best interests of the child. See D.C.Code § 16-2319(c)(2). Thus, while the right of visitation is not absolute, it remained for the trial judge to find that there were reasons supported by record evidence that visitation would be detrimental to the child.
By the time of the disposition proceeding, appellant had undergone the evaluation called for by the civil protection order. To the extent that the predisposition report had been prepared in advance of completion of the psychiatric evaluation, the trial judge could not reasonably rely, in denying visitation, on the concern expressed in the predisposition report that there had been no evaluation of appellant.[13] Any dispute about the doctor's views that arose from representations about unrecorded conversations with the doctor should have been resolvedeither by examining those representations in further detail by questioning the probation officer about her conversations with the doctor or by hearing directly from the doctorif appellant's need for counseling was to be the linchpin of the trial judge's decision to deny visitation.[14] Tr. 10-11.
Furthermore, given the statutory requirement for a visitation plan, D.C.Code § 16-2319(c)(2)(D), the predisposition report was inadequate because of the changed circumstances brought about by the completion of the psychiatric evaluation. The predisposition report called only for appellant to "comply with psychotherapeutic assessment *115 and treatment," with a review in six months. However, in view of the psychiatric evaluation completed in accordance with the civil protection order and in cooperation with the probation officer, there was no longer a basis for requiring such evaluation and treatment as a precondition to visitation.[15] Yet, so far as the record indicates, the more current document, Dr. Saavedra's evaluation, went unread by the trial judge.
Fourth, consistent with C.W.M., supra, 407 A.2d at 624, the trial judge should have made some factual findings regarding the need for counseling since that concern underlay his continued denial of visitation. The right of a parent to have visitation with his child, see Surrey v. Surrey, supra, 144 A.2d at 423, cannot be denied on the basis of an outdated recommendation in a predisposition report, indicating "extreme concern ... that [appellant] has not received therapeutic treatment or assessment." [Rpt. at 5] Nor can it be denied without consideration of the psychiatric evaluation, which the trial judge was advised, did not support earlier concerns about the father's mental health or alcoholism. Furthermore, the trial judge could not properly ignore the doctor's recommendation that both parents needed counseling in view of the undisputed evidence that the parents did not get along with each other and that this, as the parents stipulated, had resulted in harm to their child. At the end of the disposition proceeding, moreover, it was unclear precisely what type of counseling appellant was being told he would have to undergo in order to see his child.[16] While elaborate factual findings may not be required at a disposition hearing, the terse and conclusory statement by the trial judge without reference to material evidence before him cannot suffice, particularly where there is a request for a specific finding on the father's right to visitation.
Fifth, the trial judge placed too much reliance on the civil protection order which was, by its terms, not designed to restrict the assessment of the trial judge in the neglect case of how visitation was to be achieved.[17]Cf. id. at 423. The civil protection order, moreover, arose out of an intrafamily proceeding which ended with an order by Judge Haywood that was designed to keep the mother (and her family) and appellant apart. In the neglect proceeding, there was evidence before the trial judge suggesting that it was in the best interests of the child for both parents to have counseling, but neither the mother's need for nor willingness to agree to such counseling, nor appellant's willingness to join in such counseling, was ever addressed by the trial judge or any of the parties, other than appellant, who proffered the doctor's report to the trial judge. Since the only evaluation and treatment referred to in the civil protection order on which the trial judge relied was alcohol rehabilitation, there was no longer a basis, in light of the psychiatric evaluation, for deferring visitation on that basis.[18] Nor was there a basis *116 for deferring any type of visitation even if the father had problems for which he needed counseling on parenting and his relationship with the child's mother. Even where a parent suffers from mental illness, it does not necessarily follow that the parent's right of visitation can be denied outright. For example, in Surrey v. Surrey, supra, 144 A.2d at 423, the court noted that a mother, who was suffering from paranoid schizophrenia, could not be denied visitation in the absence of a finding that such visitation would have an injurious effect on the child. In addition, the trial judge made no finding that visitation under any condition would be harmful to the child and not in the child's best interests. See Surrey v. Surrey, supra, 144 A.2d at 423.
Sixth, these errors cannot be considered harmless. Cf. S.S. v. D.M., R.M. & J.S., 597 A.2d 870 (D.C.1991). This is not a neglect proceeding in which the trial judge had presided at the intrafamily proceeding or heard testimony in the neglect proceeding. Therefore, the nature of the documentary evidence before the trial judge was critical; there was no occasion for the trial judge in the neglect proceeding to make credibility determinations as between the mother and father. There was a predisposition report, a six-page psychiatric evaluation, and the transcript of the intrafamily proceeding. The trial judge admitted he had not read the latter two documents, and the first (the predisposition report) did not respond to the psychiatric evaluation. Hence, it is impossible to know whether the trial judge would have denied appellant any right of visitation with his child under any conditions if the judge had read the psychiatric evaluation and reviewed the transcript of the intrafamily proceeding before Judge Haywood. There is nothing in the record which suggests an intent to harm the child. Although the police report stated that the father appeared intoxicated at the time the child was injured in May 1990, appellant told Dr. Saavedra that he had had three beers after work; neither the police report nor the predisposition report elaborated on the nature or cause of appellant's intoxication on May 30, 1990. In December 1990, there was nothing to indicate that visitation could not have occurred, at least on a supervised basis. Accordingly, in view of the evidence offered by appellant, the trial judge should have made an independent legal conclusion, based on factual findings, regarding appellant's visitation rights.
The statute contemplates that in a neglect proceeding the trial judge will make an independent determination of a proper disposition in the best interests of the child based, at least, on reading the predisposition report. See S.S. v. D.M., R.M. & J.S., supra, at 879-80; D.C.Code §§ 16-2319, 16-2320. While intrafamily proceedings may be relevant, their focus is not necessarily the same as the focus of a neglect proceeding. Hence, before relying on an intrafamily proceeding, the trial judge in a neglect proceeding must ascertain whether, in light of challenges, there is a proper basis for relying on the intrafamily findings in a neglect proceeding. In addition, where the critical issue of concern to the trial judge in the neglect proceeding is the father's need for counseling, it necessarily follows that the trial judge could not deny visitation because the father had not obtained counseling without carefully considering a psychiatric evaluation, conducted in cooperation with the probation officer and in conformity with the civil protection order. Nor could the judge properly ignore an evaluation which indicated that prior concerns about the father's mental health and alcoholism were unfounded and that both parents needed counseling on parenting and getting along with each other. Appellant's counsel called the trial judge's attention to the fact that the results of appellant's psychiatric evaluation disputed concerns about the father's mental health, *117 and the probation officer offered no contrary expert medical opinion.[19] By the parents' stipulation, contrary to the position taken at the intrafamily proceeding, the injury to the child had been the result of a domestic dispute between the parents. Yet in denying the right of visitation, the trial judge purported to rely on the factual findings made by Judge Haywood in the intra-family proceeding which he had not read; there is nothing to indicate that the intrafamily judge's findings to which the trial judge was referring extended beyond the civil protection order itself.
Accordingly, we hold that the trial judge abused his discretion by denying appellant's visitation rights, In re A.M., 589 A.2d 1252, 1257 (D.C.1991) (standard of review is for abuse of discretion), and we reverse the order of January 17, 1991.[20]
NOTES
[1] The neglect and intra-family cases were consolidated by order of August 8, 1990. [R. 26]
[2] Blood tests determined that appellant was the father of M.D. Tr. 10.
[3] Appellant's counsel's motion to dismiss the neglect case on the ground that there was nothing to indicate that the child was in any present danger, the assault having occurred accidentally, and there was no evidence of neglect of the child, was denied. Tr. 12.
[4] A bilingual translator was present at the proceeding. Tr. 2.
[5] The parties were the mother, the guardian ad litem for the child, the probation officer, and the District government.
[6] The record indicates that appellant sought to have the neglect proceeding dismissed, and if that did not occur, alternatively, he sought visitation. Suggestions in some of the briefs that appellant sought visitation as a retaliatory measure are unsupported by the record before us.
[7] In his diagnosis of appellant, Dr. Saavedra refers in his report to a "History of Post-Traumatic Stress Disorder (in full remission)." [Rept. 5] The only other indication in Dr. Saavedra's report regarding appellant's post-traumatic stress is the statement that "[t]here is a traumatic past history, in particular the armed forces period that exposed [appellant] to the atrocities of war; but there [is] no current symptomatology ... that justify [sic] the activation of a Post Traumatic Stress Disorder." [Rept. at 5] Appellant had served for five years in the Guatemalan armed forces beginning when he was fourteen years old. [Rept. 2]
[8] The judge heard further that the incidents of harassment occurred about the time that appellant had gone for a psychiatric evaluation on December 18, 1990, Tr. 14 and that in the past such incidents by appellant had ceased before a court date. Tr. 15.
[9] The predisposition report referred to complaints by appellant that he was being harassed by the mother's sister at his place of employment. [Rpt. at 5]
[10] The predisposition report noted that an earlier referral to Youth Forensic Psychiatry had been nonproductive since that office did not have a bilingual professional to conduct the evaluation. [Rpt. at 5]
[11] The judge had observed at the disposition hearing that since appellant was under a stay away order of Judge Haywood, the issue of visitation might be academic. Tr. 13.
[12] The stipulation and the predisposition report indicated that the injury to the child had been the result of "a domestic violence altercation." [Rpt. at 5; R. 38]
[13] Dr. Saavedra's evaluation occurred on December 8 & 15, 1990. The predisposition report is dated December 3, 1990.
[14] We conclude from the transcript that appellant had no basis on which to anticipate that the doctor's evaluation would be challenged at the disposition proceeding, since it had been arranged with the cooperation and agreement of the probation officer. There is nothing in the record to indicate that the probation officer at the disposition hearing had alerted appellant's counsel to her conversations with Dr. Saavedra. Hence, there was no reason for appellant to subpoena the doctor to testify at the disposition hearing.
[15] Dr. Saavedra stated in his report that appellant "demonstrated a good mental condition during this evaluation," and recommended that appellant "is in need of some counseling but [this] does not necessarily mean psychotherapy. He needs to cope with his new socio-cultural environment, laws, etc.... There is a traumatic past history that will be ideal to elucidate in psychotherapy, but it is my opinion that in order to be effective [sic] the therapy must be on a voluntary [sic] basis." [App. B at 5] He recommended counseling for appellant and the child's mother "in order to deal adequately with parenting issues and their relationship." [App. B at 5-6]
[16] The trial judge's postdisposition remarks to appellant made this no clearer.
[17] This is entirely different from a contention by appellant that the trial judge erred by relying on Judge Haywood's findings in the intra-family proceeding because of the different standard of proof for a neglect case. The standards in both proceedings call for a finding by a preponderance of the evidence. See D.C.Code §§ 16-1005(c) (intra-family offense); 16-2317(c)(2) (neglect).
[18] Moreover, it was only after announcing that there would be no visitation that the trial judge inquired whether or not Social Services had determined, as ordered in the civil protection order, whether a program of alcoholic rehabilitation was indicated. Tr. 25. Appellant's counsel responded that it was his understanding that "the purpose of [the probation officer's] recommendation for the psychiatric evaluation by Dr. Saavedra was for a complete evaluation." Tr. 25. This was not disputed by the probation officer who was present at the disposition hearing. In view of the funds expended and the existence of a six-page psychiatric report, appellant's counsel suggested that there was no reason for a further evaluation, particularly since counsel had asked the doctor to look at the issue of the need for alcohol counseling. Tr. 25.
[19] The judge rejected appellant's counsel's argument that the probation officer, by contrast with the doctor, was not in a position to determine what appellant needed. Tr. 10. The judge noted, however, that the probation officer had spoken with the doctor. Tr. 11. According to appellant's counsel, the probation officer had both selected the psychiatrist and insisted upon the psychiatric evaluation. Tr. 17.
[20] In view of the one year limitation of the disposition order, due to expire January 29, 1992, it is unfortunate that appellant did not seek expedition of his appeal. The division, however, has expedited its decision.