No. 88-73

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

ELDON CLARENCE SHAVER, SR.,

        Defendant and Appellant.

APPEAL FROM: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert Holter, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Donald L. Shaffer, Libby, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        George Schunk, Asst. Atty. General, Helena
        Susan Loehn, County Attorney, Libby, Montana
        Scott Spencer, Deputy County Attorney, Libby

Submitted on Briefs: July 21, 1988

Decided: August 25, 1988

Filed: AUG 2 5 1988

_Ethel M. Harrison_

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This is an appeal from the Nineteenth Judicial District Court, Lincoln County, Montana. Defendant/appellant Eldon Clarence Shaver, Sr. (Shaver) was found guilty by a jury on December 4, 1987 on two counts of deviate sexual conduct pursuant to § 45-5-505, MCA. Shaver was sentenced to two eight-year terms at the Montana State Prison to be served consecutively, with all but sixty days suspended. As a condition of probation, Shaver was to direct his employer to deduct $185 per month from his paycheck for each of the two victims to be used to pay child support. From this verdict and sentencing Shaver appeals. We affirm.

Shaver presents four issues for review:

1. Did the District Court err in denying Shaver's motion to suppress an oral confession because he did not knowingly, voluntarily and intelligently waive his constitutional rights?

2. Was Shaver substantially prejudiced and denied his Sixth Amendment right to present an effective defense when the District Court denied his motion to continue when a testifying witness/victim changed the time of the charged offense?

3. Was Shaver denied his due process right to a fair trial because of the District Court's bias against his attorney?

4. Did the District Court violate Shaver's constitutional right to procedural due process at the sentencing hearing by imposing a child support order without proper notice and allowing Shaver an opportunity to be heard on the issue?

Shaver maintained residence in Troy, Montana, from 1984 through June, 1986. Included in the family were his wife Della, his two natural sons from a prior marriage, F.S. and E.C.S., a stepson, and a daughter from his current marriage with Della. E.C.S. left Troy on June 12, 1986 to live with his natural mother and F.S. left sometime in 1986 to live with relatives in Oregon.

F.S., age twelve, and E.C.S., age fourteen, Shaver's natural sons, made a report to the Yamhill County Sheriff's office in McMinnville, Oregon, that Shaver had sexually molested them. The Oregon authorities contacted Detective Clint Gassett (Gassett) of the Lincoln County, Montana Sheriff's office who obtained an arrest warrant.

Shaver was arrested July 28, 1987, on two counts of deviate sexual conduct on the basis of investigative reports from the Oregon authorities. Count I alleged Shaver engaged in deviate sexual relations with F.S. at the end of October, 1984, Count II alleged Shaver engaged in deviate sexual contact with E.C.S. on July 11, 1987. Later, on November 4, 1987, an amended information was filed stating the sexual contact between Shaver and E.C.S. occurred on July 11, 1986.

F.S. originally said he had been molested sometime during late October, 1984 or 1985. At trial, F.S. changed the period of time of the molestation to sometime between Thanksgiving and Christmas of 1984. E.C.S. told the authorities that he had been molested a number of times including the day before he left Montana to live with his mother in McMinnville, Oregon.

Shaver was arrested by Gassett and reserve deputy Bill Denton when he got off work at the local mine near Troy, Montana. Shaver testified at trial that as the officers passed his house en route to the Troy Police Department that he requested they stop to allow him to ask his wife to call

3

an attorney. Shaver claims this request was ignored. The arresting officers testified that no request was made.

Once at the Police Department, Shaver was read his rights pursuant to Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. These rights were read by Gassett from a waiver form. Gassett testified as follows: "I read him his rights off a form that we use at the Sheriff's Department. I asked if he understood that. I gave him the form and asked him to read it over and sign it if he wished to talk to me." Gassett asked Shaver if he understood the rights to which Shaver responded affirmatively. Shaver signed the form. Approximately twenty-five minutes after the questioning began, Shaver admitted to having sexual contact with his sons. Gassett then spent approximately fifteen minutes taping the confession.

Shaver later recanted his admission along with his waiver of constitutional rights. Shaver stated that he could neither read nor understand the Miranda form and had only "lied" to the officers so that he could maintain his family.

A motion to suppress Shaver's admission was first mentioned at an omnibus hearing held September 14, 1987. The motion was filed October 22, 1987, and stated as grounds that Shaver had been awake "continuously for over 20 hours, and that he had requested permission to call his wife to have her seek counsel for him, and that request was denied. . ."

On November 4, 1987, the court held a hearing on the motion to suppress and was presented with testimony of Craig Montagne (Montagne), a psychologist for the local school district. Montagne had tested Shaver and concluded Shaver had an I.Q. between 71 and 75 which bordered on mental retardation and that his reading comprehension level was grade 3.9. The District Court denied the motion stating in its findings of fact and conclusions of law filed November

25, 1987, that although Shaver was "no mental giant . . . it is clear from the record that he knew and understood what he was doing, and he knew and understood his rights, which he voluntarily waived."

On November 4, 1987, Shaver filed a Notice of Alibi, pursuant to § 46-15-323(3), MCA, as to Count II of the amended information that stated some sexual contact occurred on June 11, 1986. Shaver claimed he worked that day. Shaver's counsel asserts on appeal that the Notice of Alibi encompassed the intention that Shaver would show that due to his work schedule and the family's routine, he never would have had the opportunity to commit the acts.

A jury trial was held December 3, 1987. F.S. changed his testimony claiming that sexual contact occurred between Thanksgiving and Christmas of 1984. Shaver claimed that he had prepared an alibi for the dates of late-October, 1984, which was consistent with F.S.'s testimony to the Oregon authorities. Shaver's counsel moved for a continuance to allow him to properly prepare the alibi defense but the motion was denied by the District Court on grounds that the specific time element was not a material element of the offense of deviate sexual conduct.

Defense counsel attempted to have Della Shaver admitted as a witness in Shaver's case-in-chief. The State objected to Della's testimony as she was not properly listed on the defense list of witnesses. Therefore, the District Court cited defense counsel for contempt of discovery deadline violations and imposed a fine. Nonetheless, Della was allowed to testify.

Shaver moved for a mistrial when the jury returned a guilty verdict on both counts. The motion was denied. Shaver was sentenced to two consecutive eight year sentences with all but sixty days suspended and was ordered to undergo

5

counseling in a sex offender program. The District Court further took "notice of other proceedings" in regard to Shaver's duty of child support and ordered as "a form of restitution under Section 46-18-201, M.C.A." that Shaver be required to pay $370 per month for the victims.

In his first issue, Shaver seeks a new trial claiming the District Court erred in denying his motion to suppress statements of confession made after his arrest. Section 46-13-301, MCA, governs motions to suppress confessions or admissions:

> (1) A defendant may move to suppress as evidence any confession or admission given by him on the ground that it was not voluntary. The motion shall be in writing and state facts showing wherein the confession or admission was involuntary.
>
> . . .
>
> (4) If the allegations of the motion state facts which, if true, show that the confession or admission was not voluntarily made, the court shall conduct a hearing into the merits of the motion. The prosecution must prove by a preponderance of the evidence that the confession or admission was voluntary.
>
> (5) The issue of the admissibility of the confession or admission may not be submitted to the jury. If the confession or admission is determined to be admissible, the circumstances surrounding the making of the confession or admission may be submitted to the jury as bearing upon the credibility or the weight to be given to the confession or admission.

This Court has previously noted that "[t]he standard to be applied in our review of this issue is whether there is substantial credible evidence to support the District Court's

6

finding." State v. Gould (Mont. 1985), 704 P.2d 20, 27-28, 42 St.Rep. 946, 953.

The District Court found that Shaver had voluntarily waived his rights, including his right to an attorney, and had confessed to deviate sexual contact with his two sons. We must view the "totality of the circumstances" in our determination of whether substantial credible evidence exists to support the District Court's findings that Shaver knowingly and intelligently waived his rights and confessed to the crimes charged. Gould, 704 P.2d at 28; State v. Blakney (1982), 197 Mont. 131, 134, 641 P.2d 1045, 1047. The "totality of the circumstances" includes "consideration of '[Shaver's] demeanor, coherence, articulateness, his capacity to make full use of his faculties, his memory and his overall intelligence.'" Gould, 704 P.2d at 28 (citing United States v. Hollis (D.Del. 1975), 387 F.Supp. 213, 220); Blakney, 641 P.2d at 1049.

Shaver claims that he was unable to knowingly and intelligently waive his rights because he is mentally incompetent. We addressed a similar issue in State v. Phelps (Mont. 1985), 696 P.2d 447, 42 St.Rep. 305, wherein we stated:

> Mental illness or deficiency does not in itself preclude admissibility of defendant's statements so long as he was capable of understanding the meaning and consequences of his statements. It is an important factor to consider in examining the totality of the circumstances, but it is not conclusive (Citations omitted.)

Phelps, 696 P.2d at 451. The circumstances of this case indicate that Shaver was capable of understanding the true meaning and consequences of his actions and that those actions were made knowingly and intelligently. Shaver conversed in a coherent and intelligent manner during his

7

relatively short forty-minute interrogation by Officer Gassett on the night of his arrest. Shaver verbalized during the taped portion of the interview that he had, in fact, been read his Miranda rights, that he understood those rights, and that his prior act of waiving those rights was done voluntarily without coercion, threat, or promises of leniency. Shaver proceeded to admit that he sexually molested his sons and gave a specific detailed description of each molestation. At the conclusion of the interview, Shaver was again asked whether he had been coerced into his confession to which he replied, "No sir. You've been really nice."

Coupled with Shaver's actions and demeanor the afternoon of his arrest, the District Court was also presented with the fact that Shaver, a thirty-five-year-old gainfully employed husband and father, was able to intelligently and coherently express himself at the suppression hearing and at trial. The school psychologist testified that Shaver's reading comprehension level was at least a 3.5 grade level and was possibly as high as a 5.0 grade level. Viewing the circumstances in their totality, we hold that there is substantial credible evidence showing Shaver knowingly and intelligently waived his rights. Accordingly, Shaver's confession was voluntary and admissible pursuant to § 46-13-301, MCA.

Shaver also claims that his confession was involuntary because he allegedly asked that he be allowed to stop at his home while en route to the Troy Police Department so he could have his wife call an attorney. Officer Gassett testified that Shaver did not ask for an attorney until after the interview. The District Court, as the trier of fact at the suppression hearing, was presented with the conflicting testimony of Shaver and Officer Gassett concerning the

alleged request for an attorney. As the trier of fact, the District Court had to resolve the conflicting testimony. Sections 26-1-202, and 26-1-203, MCA. The District Court found that Shaver had not requested an attorney and had voluntarily waived his rights. Using the standard of review set forth above, there is substantial credible evidence to support the District Court's conclusion that Shaver did not request an attorney.

Shaver's second issue for review is based on the argument that the District Court substantially prejudiced Shaver when it would not grant a continuance after F.S. changed the time sequence of the sexual contact from October 1984 to between Thanksgiving and Christmas of 1984. Shaver bases this claim of prejudice on the fact that he had filed an alibi defense, that the State failed in its statutory duty to notify the defense that F.S.'s testimony would be different from the allegations in the complaint, and that, in light of the testimony, the two counts should have been severed.

Generally, as Shaver appropriately points out, a filed information should state the "time and place of the offense as definitely as can be done." Section 46-11-401(1)(c)(iv), MCA. However, as Shaver also notes, we have held:

> The law does not require that the time and place be stated with impossible precision; it merely requires that they be stated as definitely as possible under the circumstances of the case, unless time is a "material ingredient in the offense."

State v. Clark (Mont. 1984), 682 P.2d 1339, 1344, 41 St.Rep. 833, 837; citing State v. Riley (1982), 199 Mont. 413, 422, 649 P.2d 1273, 1277.

9

Shaver contends that since he raised an alibi defense time is an essential element of the offense. Again, however, _Clark_ is instructive. In _Clark_, this Court looked to the case of State v. Hall (1976), 171 Mont. 33, 554 P.2d 755 in regard to the argument that noticing an alibi defense thereby confers materiality and makes time a necessary element of the State's case.

> Assertion of the alibi defense does not change the nature of the crime charged here. Defendant should have realized the State would present evidence proving the crime took place sometime . . . Defendant cannot restrict the state's case by merely asserting intent to rely on an alibi defense for a limited period of time within which the crime could have occurred. (Emphasis added.)

_Clark_, 682 P.2d at 1344, 41 St.Rep. at 838.

Additionally, this is a case of child abuse. Where children are victims the court will not mandate a specific period of time to be precisely stated in the information even after an alibi defense is asserted. Even though F.S. is older than the child involved in State v. D.B.S. (Mont. 1985), 700 P.2d 630, 42 St.Rep. 770, we still find that case instructive.

> We should recognize that children, particularly four-year olds are not governed by the clock and calendar as adults are. They are generally at a loss to apply times or dates to significant events in their lives. "Children are less likely to distinguish dates and time with specificity." State v. Clark, 682 P.2d at 1344. The fact that the victim cannot set a date for the crime should not be fatal to the State's case, thus making the defendant virtually immune from prosecution.

10

D.B.S., 700 P.2d at 634.

We will not hold abused children to a standard requiring them to comprehend and remember specific times and dates. Defendant here was given a general time period in which the offense occurred. That is all that is required in these types of cases. See also State. v. Cornell (Mont. 1986), 715 P.2d 446, 43 St.Rep. 505.

A review of the alibi defense itself shows that the District Court did not err in disallowing a motion to continue. The court was understandably unimpressed by the testimony presented in regard to the alibi defense.

The basis of the alibi was that due to the nature of Shaver's work shift and his family's activities, he and the victims would not have had the opportunity to be alone. Witnesses called to buttress this argument stated differing interpretations of the hourly records at the mining operation where Shaver was employed. Therefore, these records themselves were suspect. However, on closer inspection, it is clear that Shaver was home a sufficient amount of time to have the opportunity to commit the acts. Therefore, the alibi defense was ineffective, even if the court had allowed the motion to continue.

Shaver's claim that the State failed to inform him of F.S.'s changed testimony is also unpersuasive. Although it is undisputed that § 46-15-322, and § 46-15-327, MCA, require the State to disclose all pertinent information it may gather and the duty to disclose is continuing, the statutes have no effect until the State actually develops the knowledge of a specific act, fact, or information that exculpates the defendant. Here, there is no evidence in the record that the State discovered or knew that F.S. was going to vary his claim of dates as to when the alleged acts occurred. Without such knowledge, the State was not in violation.

Finally, Shaver's claim of required severance is inappropriately before this Court. Issues raised for the first time on appeal will not be addressed. Sections 46-20-104(2), 46-20-701(2), MCA. See State v. Lamb (1982), 198 Mont. 323, 646 P.2d 516, and Matter of B.L.O. (Mont. 1984), 689 P.2d 1246, 41 St.Rep. 2024.

In issue three, Shaver contends that the District Court's bias against defense counsel constituted prejudicial bias toward Shaver preventing a fair and impartial trial. Initially, Shaver contends he was deprived of "[a] fair trial in a fair tribunal," the basic requirement of due process. In re Murchison (1955), 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed.2d 942, 946. This right, according to Shaver, allows for the disqualification of biased decision-makers. However, in this case, no attempt was ever made to disqualify the District Court judge.

Shaver claims he was unable to make a motion to disqualify the District Court judge because the motion had to be filed not less than twenty days before the original date of trial and "defense counsel was substituted in at a later date so as to preclude an opportunity to move to disqualify" the judge. Citing § 3-1-802, MCA; State v. Harvey (Mont. 1986), 713 P.2d 517, 43 St.Rep. 46. The State appropriately rebuts this contention since § 3-1-802, MCA, has been superseded by Supreme Court Order dated June 17, 1987, amended July 29, 1987, and effective September 1, 1987. That Supreme Court Order created a new disqualification for cause statute, § 3-1-805, MCA, that requires filing an affidavit for disqualification for cause more than thirty days before the date of a hearing or trial.

According to the notice of substitution of counsel in the record defense counsel was substituted by Shaver on September 29, 1987. The first hearing date on the motion to

12

suppress was scheduled for November 4, 1987, and therefore, counsel had five days in which to properly file for the disqualification of the judge.

On its merits, Shaver's argument also fails. Shaver admits that the trial court was within its statutory authorized power to hold defense counsel in contempt for failing to comply with the discovery order. Section 46-15-329, MCA. The trial transcript shows that any comments made by the judge were done outside the presence of the jury. The adverse rulings against the defense counsel are simply proper compliance with the laws of this state. We find no bias in the record sufficient to adversely affect Shaver's right to a fair trial.

Finally, we hold there is no reversible error in the sentencing requirements rendered by the District Court in this case. Shaver's contention in Issue Four is that the District Court violated his constitutional right to procedural due process at the sentencing hearing when it ordered him to pay child support for his two sons. Shaver claims he was not given notice or opportunity to be heard on this issue.

Under § 46-18-201(1)(a), MCA, the District Court has authority to impose reasonable restrictions or conditions including restitution (subsection (iv)), and "any other reasonable conditions considered necessary for rehabilitation . . . " (subsection (x)). The statute further states "[t]he sentencing judge may impose on the defendant any reasonable restrictions or conditions during the period of suspended sentence." Section 46-18-201(1)(b), MCA.

The presentence investigation made the court aware of Shaver's previous child support payment problems. Shaver's criminal history showed that he had previously served two five-day sentences on misdemeanor nonsupport charges in 1980

13

and 1981. Shaver admits that he was served with a copy of the presentence investigation prior to the hearing. This allowed him to prepare for the sentencing.

In State v. Nichols (Mont. 1986), 720 P.2d 1157, 1162, 43 St.Rep. 1068, 1074, this Court stated:

> The statutes governing sentencing provide ample notice of matters which may come up. These, along with notice of the date of hearing, the full disclosure of presentencing information in open court; the ability of the defendant to propound evidence, to confront witnesses, and to participate in the sentencing proceeding provide a full panoply of due process safeguards for the liberty interest implicated. (Citations omitted.)

Nichols, 720 P.2d at 1162.

Here, no due process was violated. Shaver knew that the child support violations were noted in the presentence investigation and therefore should have known that it might be considered by the court. The District Court's order stated in part:

> 8. The victims in this case are [E.C.S.] and [F.S.], children of the Defendant and persons for whom the Defendant owes the duty of support. The Court takes notice of other proceedings in this Court and of Defendant's obligations thereunder. Defendant currently has income in the $22,000.00 to $24,000.00 range and has the ability to support these children, who, as stated, are Defendant's victims. The Court sets $185.00 per month, per child, as the reasonable cost of their support which amount is within Defendant's ability to pay. The Court notes Defendant has not paid all the support due for these children in the past and that they have been supported by public welfare during a part of the time Defendant was to pay support. Accordingly, the Defendant is ordered to

14

> direct his employer to deduct $185.00 per month, per child, for a total of $370.00 per month from Defendant's pay, . . .
>
> . . .
>
> The Court considers this unique order, and its rather unusual effect, to be a form of restitution under Section 46-18-201, M.C.A. It is also a rehabilitative provision to Defendant in that it makes him responsible to pay some minimal part of not only the care but any counseling required by these children because of Defendant's abuse of them. This requirement ceases for each child upon the attainment of age 18.

The District Court stated that the imposition of child support payment was for rehabilitative and restitution purposes. The State cites numerous cases that payment to victims of a crime is appropriate as a means of restitution. State v. Korussos (Or.Ct.App. 1986), 728 P.2d 559; State v. Morgan (1982), 198 Mont. 391, 646 P.2d 1177; State v. Sullivan (Or. 1976), 544 P.2d 616; People v. Williams (Mich. Ct.App. 1975), 225 N.W.2d 798. Even more applicable are the cases that have held that child support obligations are a legitimate condition to be considered as part of probation. State v. Pettis (S.D. 1983), 333 N.W.2d 717; see also Ward v. State (Fla.Dist.Ct.App. 1987), 511 So.2d 1109; Dorsey v. State (Ga.Ct.App. 1978), 245 S.E.2d 31 (cases where states have specific provisions providing for imposition of child support as probation conditions).

Finally, Shaver argues that his former wife, Barbara Gail Love (Love) and he contracted so that no child support was required for E.C.S. On June 12, 1986, a "Permanent Change of Custody Agreement" was signed by Love and Shaver. This document was notarized but was not signed by a judge. Although the District Court's ruling is based on

15

rehabilitation and restitution we note that parents do not have the ability to enter contracts to set child support. The "custody and support of children are never left to contract between the parties." In re Marriage of Mitchell (Mont. 1987), 746 P.2d 598, 603, 44 St.Rep. 1936, 1941-1942; In re Marriage of Carlson (Mont. 1984), 693 P.2d 496, 500, 41 St.Rep. 2419, 2424.

The District Court is vested with significant discretionary power when it considers sentencing. Under the facts of this case, the District Court wisely provided for the victims in this unfortunate incident. Shaver received a minimal sentence in this case as all but sixty days of his sentence was suspended. This allows Shaver to maintain his employment which in turn should allow the victims to benefit.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

16