Antonio BROWN, Appellant,

v.

UNITED STATES, Appellee.

No. 89–481.

District of Columbia Court of Appeals.

Submitted June 14, 1990.

Decided Aug. 27, 1990.

Alfred J. Merlie, appointed by this court, was on the brief, for appellant.

Jay B. Stephens, U.S. Atty., with whom John R. Fisher, Charles Ambrose, and Karen E. Rhew, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, and STEADMAN and SCHWELB, Associate Judges.

ROGERS, Chief Judge:

Appellant Antonio Brown appeals from his conviction and sentence under the District of Columbia Youth Rehabilitation Act, D.C.Code § 24–803(b) (1989 Repl.) (YRA), which required as a condition of probation that he pay fifty dollars per week in child support. He contends that the trial judge exceeded her authority under the YRA in imposing the condition of child support, and, alternatively, abused her discretion since the condition was not reasonably related to his rehabilitation and procedurally flawed. We hold that the trial judge did not exceed her authority in setting child support as a condition of probation under the YRA but did abuse her discretion in determining the amount.

I

The Council of the District of Columbia, in response to the repeal by Congress of the Federal Youth Corrections Act, enacted the District of Columbia Youth Rehabilitation Act of 1985 (YRA). D.C.Code §§ 24–801 to –807 (1989 Repl.). The purpose of the YRA is to provide "rehabilitation opportunities for deserving young adult offenders," whom the YRA defines as persons under twenty-two years of age not convicted of murder. D.C.Code § 24–801(6); REPORT OF THE COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON THE JUDICIARY, ON BILL 6–47, "THE YOUTH REHABILITATION ACT OF 1985," (REPORT) at 2 (June 19, 1985). The primary objectives are "1) to give the court flexibility in sentencing a youth of-

fender according to his individual needs; 2) to separate youth offenders from more mature, experienced offenders; and 3) to afford the opportunity for a deserving youth offender to start anew through expungement of his criminal record." *Id.*

Although sentencing flexibility in order to address the particular needs of a youth offender was a specific objective of the YRA, this goal has always been a consideration in probation sentencing schemes. *See Smith v. United States,* 474 A.2d 1271, 1274 (D.C.1983); *Moore v. United States,* 387 A.2d 714, 716 (D.C.1978). Likewise the terms and conditions of probation, which are committed to the discretion of the sentencing judge, have always been limited by the requirement that the conditions be reasonably related to the rehabilitation of the convicted person and the protection of the public. *Smith, supra,* 474 A.2d at 1274; *Moore, supra,* 387 A.2d at 716. Conditions of probation also must not be immoral, illegal, or impossible to perform. *Huffman v. United States,* 259 A.2d 342, 346 (D.C.1969).

Appellant entered a plea to attempted possession of cocaine,[1] D.C.Code § 33–541(a)(1) (1988 Repl.), and at sentencing requested that he be placed on probation under the YRA as recommended in the presentence report. His attorney represented that appellant was "a young man who … is trying to do something for himself, trying to get himself ahead," and that his involvement in this case was "out of character for Mr. Brown," who realized the seriousness of his action and that he cannot get "involved in anything like this again." The judge imposed a sentence of probation for two years subject to the conditions of "job counseling, securing and maintaining regular employment, drug treatment and counseling with periodic urine surveillance." Upon learning that appellant was not paying any child support, the judge added the condition that he pay fifty dol-

lars per week in child support, to begin as soon as he was employed. Defense counsel objected on the ground that the judge lacked jurisdiction since child support was a family matter, but the judge dismissed the objection:

> Part of youth rehabilitation is to rehabilitate and make him into a useful and productive citizen, accepting his responsibility in society. One of his responsibilities to society as he lets his sperm out and creates little people is to support those little people[.] [T]herefore, as part of his nurturing and understanding of his role as an adult male in this society with minor children, [he is] to support them. I am going forward to help him understand what an adult male does, what his responsibilities are, and how he functions in society.

Appellant thereafter filed a motion to reduce sentence to vacate the condition of probation that he pay child support. He maintained that the condition violated due process and was unlawful. The trial judge denied the motion, noting that appellant admitted paternity to his probation officer and the condition was "reasonably related to rehabilitation."

## II

■ The YRA provides that "[i]f the court is of the opinion that the youth offender does not need commitment, it may suspend the imposition or execution of sentence and place the youth offender on probation." D.C.Code § 24–803(a). The statute is silent on whether or not child support can be made a condition of probation. However, like the Federal Youth Corrections Act (FYCA), on which the YRA is largely modeled,[2] the YRA provides that its sentencing alternatives are in addition to those otherwise available under law. *Id.* § 24–803(f). *See Durst v. United States,* 434 U.S. 542, 98 S.Ct. 849, 55 L.Ed.2d 14

---

1. Appellant was indicted for possession with intent to distribute a controlled substance in violation of D.C.Code § 33–541(a)(1) (1988 Repl.). The police report indicated that he was observed holding a plastic bag with several small plastic zip lock bags of a white rock-like

substance. Appellant claimed he picked up the bag not knowing what it contained. The trial judge expressed skepticism about his claim that he did not know what the bag contained.

2. *See* REPORT, *supra,* at 3.

(1978) (upholding imposition of fine and restitution as conditions of probation under FYCA, which was silent on whether these conditions of probation could be imposed under the Act, since Act incorporated other provisions of law). Although the District of Columbia probation statute, D.C.Code § 16–710 (1989 Rep.), does not include support of one's dependents as a condition of probation, as did the Federal Probation Act,[3] nothing in the legislative history of the YRA suggests that the D.C. Council intended to restrict conditions that were previously available for the judge to impose under the FYCA. Moreover, the "Judgment and Commitment/Probation Order" requires that a probationer "[o]bey all laws, ordinances and regulations," and parents are legally obligated to support their children. D.C.Code § 16–916 (1989 Repl.).

Conditioning probation on the payment of child support is somewhat analogous to a condition of restitution—paying what is owed. Both conditions focus on rehabilitation, with the primary consideration being the benefit accruing to society as a whole, and only secondarily on the benefit to a third party. *Id. See Kelly v. Robinson,* 479 U.S. 36, 52, 107 S.Ct. 353, 362, 93 L.Ed.2d 216 (1986); *Basile v. United States,* 38 A.2d 620 (D.C.1944); D.C.Code § 16–711 (1989 Repl.) (restitution as a condition of probation). Unlike the situation confronting the court in *Davis v. United States,* 397 A.2d 951, 954–55 (D.C.1979), we find no legislative history, or other indication, that a judge may not impose as a condition of probation under the YRA a requirement that an offender pay child support. *See id.* at 954–55 (historical review of probation statute indicating absence of authority to impose a split sentence, citing extensive legislative history). The court

has upheld probation conditions relating to social obligations for a juvenile, *In re L.M.,* 432 A.2d 692, 694 (D.C.1981), and the broad discretion vested in the judge in determining a disposition designed to rehabilitate a juvenile delinquent, D.C.Code § 24–803 (1989 Repl.), is comparable to the broad goals of the YRA. REPORT, *supra,* at 2. In adult criminal cases the sentencing judge is vested with broad discretion imposing conditions of probation, the statute referring only to probation "upon such terms as [the court] deems best." D.C.Code § 16–710.[4] *See Simmons v. United States,* 461 A.2d 463, 464–65 (D.C.1983).

■ A number of state courts have held that child support payments are a proper condition of probation for an adult criminal defendant. *People v. Wager,* 129 Mich. App. 819, 821, 342 N.W.2d 619, 621 (1983) (negligent homicide); *People v. Ford,* 95 Mich.App. 608, 291 N.W.2d 140 (1980) (unarmed robbery conviction); *State v. Shaver,* 233 Mont. 438, 760 P.2d 1230 (1988) (sexual assault); *Jackson v. State,* 497 P.2d 475 (Okla.Cr.1972) (omitting to provide for a minor child); *State v. Pettis,* 333 N.W.2d 717 (S.D.1983) (possession of marijuana) (and cases cited from six other jurisdictions). *See Ward v. State,* 511 So.2d 1109 (Fla.Dist.Ct.App.1987) (statute requiring probationers to support legal dependents); *Dorsey v. State,* 145 Ga.App. 750, 245 S.E.2d 31 (1978) (same); *Commonwealth v. Papariella,* 294 Pa.Super. 215, 439 A.2d 827 (1987) (same) (adultery and bastardy convictions). Inclusion of child support as a condition of probation is more common in cases where a parent has abandoned or abused children,[5] but courts also have deemed it to be appropriate where the criminal conviction is unrelated to the condition of support. *See Ward, supra,* 511 So.2d at

---

**3.** 18 U.S.C. § 3651 ("provides for the support of any persons, for whose support he is legally responsible") (repealed October 12, 1984).

**4.** D.C.Code § 16–710(a) (1989 Repl.) provides in relevant part:

[T]he court may, upon conviction, suspend the imposition of sentence or impose sentence and suspend the execution thereof, for such time and upon such terms as it deems best, if it appears to the satisfaction of the court that

the ends of justice and the best interests of the public and of the defendant would be served thereby.

**5.** *See Bray,* 181 Ga.App. 678, 679, 353 S.E.2d 531, 532 (1987) (abandonment of illegitimate child); *Dorsey, supra,* 145 Ga.App. at 751, 245 S.E.2d at 32 (abandonment); *Shaver, supra,* 233 Mont. at 440, 760 P.2d at 1232 (deviant sexual conduct with sons); *Jackson, supra,* 497 P.2d 475 (failing to provide for children).

1110 (aggravated battery with a deadly weapon); *Pettis, supra,* 333 N.W.2d at 718–19 (distributing marijuana); *Ford, supra,* 95 Mich.App. at 610, 291· N.W.2d at 142 (unarmed robbery). *But see In re Bushman,* 1 Cal.3d 767, 777, 463 P.2d 727, 733, 83 Cal.Rptr. 375, 381 (1970) (limiting adult probation conditions to those related to conviction) [6]; *State v. Jackson,* 226 N.C. 66, 67, 36 S.E.2d 706, 707 (1946) (setting aside condition of payment of alimony in accord with the long-standing state practice requiring adult defendant's consent to suspension of sentence). We think neither the absence of a civil court order to pay child support nor even the presence of a private agreement between parents, at least if inadequate, renders child support an improper condition of probation. *Cf. Shaver, supra,* 233 Mont. at 445, 760 P.2d at 1237.

This court has recently observed that "[t]he provision of adequate child support surely ranks high among the priorities of a civilized nation." *Fitzgerald v. Fitzgerald,* 566 A.2d 719, 720 (D.C.1989). Indeed, the paternal obligation is a matter of national policy. *See* Child Support Enforcement Act, 42 U.S.C. §§ 651–667 (1982 & Supp. III 1985). Defense counsel described appellant as a young man who was "trying to get himself ahead." The trial judge explained that in order to provide appellant with a rehabilitative structure and help him to understand "what his responsibilities are" and how to function in society, he should act consistently with his parental obligations to his two children, whose parentage he admitted. It is hardly unreasonable to do so by requiring employment, counseling and acknowledgement of his duty and responsibility to provide for the support of his children. *See Shaver, supra,* 233 Mont.

at 445, 760 P.2d at 1237. *Cf. In re L.M., supra,* 432 A.2d 692 (juvenile probation, with directions to obey the law, go to school, remain in his mother's custody, and observe weekday and weekend curfews for smoking a cigarette on a Metrobus); *Moore v. United States,* 387 A.2d 714 (D.C.1978) (assault conviction, psychiatric examination as condition of adult probation in view of presentence report on unusual behavior).

This is our first occasion to consider the propriety of particular probation conditions under the YRA. Although the condition of probation at issue is not one that has otherwise come to our attention, it was available to a judge imposing a sentence under the FYCA, on which the YRA is modeled, and its imposition has been sustained by courts in other jurisdictions. Although the condition that appellant pay child support is unrelated to the crime of which he was convicted, we conclude that the trial judge could reasonably find that it related to appellant's need for the kind of comprehensive rehabilitation contemplated by the YRA. The YRA affords a second opportunity, after the juvenile delinquency system, to a youthful offender to avoid a lifelong stigma of a criminal conviction, providing for the setting aside the conviction. D.C. Code § 24–806.[7] Appellant admitted, as the presentence report indicated, that he was the father of two young children, and his attorney maintained that appellant was trying to get his life in order, the offense being an aberration. While there are limits to which public policy goals can be used to define the conditions of probation, *see, e.g.,* note 6, *supra,* the imposition of a condition to pay child support is consistent with requiring appellant to comply with the law

---

6. The California limitation arose in a case in which a woman convicted of second degree robbery was placed on probation subject to not living with a man to whom she was not married and not becoming pregnant (again) unless she was married. The conditions were held invalid because they had no relationship to the conviction, applied to conduct that was not itself criminal, and required or forbid conduct that was not reasonably related to future criminality, and thus did not serve the statutory ends of probation. *People v. Dominguez,* 256 Cal.App.2d 623, 626, 64 Cal.Rptr. 290, 293 (1967).

7. D.C.Code § 24–806 provides that upon an unconditional discharge of a committed youth offender before the expiration of the maximum sentence or the unconditional discharge of a youth offender placed on probation before the end of the maximum term of probation, the conviction is "automatically set aside ... and the court shall issue to the youth offender a certificate to that effect."

(albeit here a civil obligation) and with the YRA goal of preparing him for a law-abiding life. Accordingly, we hold that the trial judge had jurisdiction under the YRA to include the payment of child support as a condition of probation and did not abuse her discretion in finding that such a condition was related to appellant's rehabilitation.[8]

## III

To determine the appropriate level of child support in a traditional domestic relations proceeding, the trial court must first determine the children's needs and appellant's ability to pay, and courts have considered these factors relevant in criminal cases in which an award was made. *See, e.g., Ward, supra,* 511 So.2d at 1110 (trial court erred in failing to determine defendant's ability to pay child support); *Ford, supra,* 95 Mich.App. at 611, 291 N.W.2d at 143 (trial court erred in failing to inquire into defendant's financial condition). More recently, however, the Council of the District of Columbia has established child support guidelines for use in determining the appropriate level of child support. *See* Child Support Guideline Amendment Act of 1990 (Guidelines), D.C. Act 8–208, 37 D.C. Reg. 3720 (1990). See D.C.Code § 16–916.1 (1990 Supp.) (substantially identical prior temporary Child Support Guideline). Under either methodology, there are rules of procedure to be followed in order to assure that an appropriate level of child support is imposed. A plethora of factors are generally relevant to this determination, most prominent being the needs of the children, but which also include the financial resources of the non-custodial parent, and the subsistence needs of that parent. The determination is often difficult, potentially involving fairly sophisticated judgments and generating controversy among the affected parties.

At the time of sentencing, appellant stated that although he did not pay scheduled child support, he "supported his kids, but ... [he had] no financial balance as to how much they get per week." The judge responded that now he did. Appellant protested that "What I was trying to say is whenever their mother come to me and let me know—", the judge interrupted, "No. No. No. No. It's not her job to beg you for money to support your children." Appellant responded that she did not beg him, and the judge said, "No. Every week," to which appellant responded, "Okay." The judge further explained, "It is not something they ask you for. Children are not bound to ask their parents for support. It is something that flows naturally from the fact that you created them and brought them here. Got it?" Appellant responded "Yes." Other than the judge's inquiry whether appellant was paying child support and the announcement of the amount of child support to be paid, this was the full extent of the proceedings relevant to the child support order.

██ Appellant contends that the trial judge abused her discretion by imposing the condition that he pay child support of fifty dollars per week without making findings as to the needs of his children and his ability to pay, and in the absence of a demand for payment from the children's mother. Although appellant finally agreed that he would pay fifty dollars per week, the proceedings leave much to be desired. Appellant's responses indicate that there was a need, in the mother's view, for him to contribute to the support of the two children, but neither the mother nor the children were before the court.[9] Nothing in the record offers assurance that the trial judge had sufficient information on which

---

**8.** Appellant's contention that the trial judge was without jurisdiction because the Family Division of the Superior Court of the District of Columbia, and not the Criminal Division, has exclusive jurisdiction over questions of paternity and child support, is meritless. *Andrade v. Jackson,* 401 A.2d 990, 992 (D.C.1979) (although the Superior Court is divided into several divisions, "these functional divisions do not delimit their power as tribunals of the Superior Court....")

**9.** Any order of child support would, therefore, be without prejudice to the mother or children seeking child support under D.C.Code § 16–916 (1989 Repl.), since they were not parties to the proceedings here.

to determine a permissible level of child support. The trial judge made no findings on the relevant circumstances, and the record on appeal does not enable us to determine whether the amount of child support was determined in accordance with law. *See Murville v. Murville,* 433 A.2d 1106, 1109 (D.C.1981) (trial court must make sufficient findings to permit meaningful appellate review).

For a judge to undertake the task of determining a level of child support in the course of a sentencing hearing, the amount to be paid must be determined in a rational and equitable manner. When the judge imposed the condition that appellant pay $50 a week in child support, she knew virtually none of the relevant facts. She did not know whether appellant would find employment, or what his income would be if he did. Yet the judgment and commitment order, contrary to the judge's oral remarks at sentencing, did not condition the obligation to pay on whether appellant found a job. There was no information about the mother's income or obligations. The judge had not been apprised of the children's needs, or of any relevant special circumstances. The judge did not know how much support appellant was paying informally, or whether or to what extent the mother thought it was insufficient. If there was any agreement between the parents, it was not elicited at the hearing. To the extent, if any, that the Guidelines are applicable,[10] there is no indication that the judge had determined or considered the Guidelines amount.

Given these circumstances, it is difficult to avoid the conclusion that the amount of $50 a week was selected in an arbitrary manner. The exchange that preceded the announcement of the amount, which arose when the judge was orally specifying the conditions of appellant's probation, was brief:

> THE COURT: ... What are you paying in child support now?
>
> THE DEFENDANT: I'm not paying no child support.
>
> THE COURT: Fifty dollars a week child support.

As previously noted, when appellant tried to explain, he was cut off by the trial judge.

There are other troubling aspects to this portion of the sentencing proceeding. While the transcript and judgment refer to a payment of $50 a week, the subsequent order denying reconsideration, which the judge signed twice, referred to payment of $50 a month. Although the parties have apparently overlooked this inconsistency, it causes concern that things may have been done with excessive haste. The judge also did not specify when payments were to be made, which is especially troubling in light of the reference to the obligation to pay being linked to future employment. Other aspects of the mechanics involved, such as who would determine whether appellant's job, if he found one, provided sufficient income to enable him to make the support payments and who would keep track of the payments, could, presumably, be worked out by the probation officer assigned to appellant's case, but the vagueness of the order is rife with potential enforcement problems.[11]

---

10. By this we mean only that in a civil proceeding for child support the principal focus is on the child. Different considerations apply here. *Cf. United States v. Carson,* 669 F.2d 216, 217 (5th Cir.1982) (in ordering restitution, focus in probation is on the offender); *State v. Harris,* 70 N.J. 586, 591, 362 A.2d 32, 34 (1976) (same). Hence, the amount that should be required when the focus is on rehabilitation may be different from (though never greater than) an appropriate award in a civil proceeding, which serves only as a limit and not necessarily a mandatory target in a probation proceeding. The procedures and extent of the factual investigation into child support factors may accordingly reflect this difference.

11. Whether the obligation to pay child support here imposed is best analogized to a restitution requirement in a criminal case, *see, e.g., Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), or to an order issued in a domestic relations proceeding, *see Lundregan v. Lundregan,* 102 U.S.App.D.C. 259, 252 F.2d 823 (1958), a probationer may not be incarcerated for failure to comply with it in the absence of a finding either that he is able to pay, *Bearden, supra,* 461 U.S. at 668–71, 103 S.Ct. at 2070–72; *Lundregan, supra,* 102 U.S. App.D.C. at 260–61, 252 F.2d at 824–25, or, if he is not, that he intentionally reduced his earning capacity. *Bearden, supra,* 461 U.S. at 669, 103 S.Ct. at

Accordingly, if the payment of child support is to be made a condition of probation, the procedural requirements should be similar to those required where restitution is ordered. As the court stated in *Morgan v. Wofford,* 472 F.2d 822, 827 (5th Cir.1973):

prior notice and an opportunity to be heard are prerequisite where $7,000 restitution is ordered by a court of law to be paid out of appellant's weekly salary and the penalty for failure to pay is imprisonment. Especially when criminal sanctions may be involved, we have always been careful to surround the procedures through which the state may deprive a defendant of freedom with safeguards against possible miscarriages of justice.

*See Sloan v. United States,* 527 A.2d 1277, 1289–90 (D.C.1986) (restitution). Moreover, to enable appellate courts to review a child support order, the order must indicate the manner in which the amount has been determined. *See Murville v. Murville, supra,* 433 A.2d at 1109; *People v. Pettit,* 88 Mich.App. 203, 205, 276 N.W.2d 878, 880 (1979). *See also United States v. Lemire,* 232 U.S.App.D.C. 100, 127, 720 F.2d 1327, 1354 (1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984).

In sum, the trial judge had a constructive idea which properly focused on appellant's rehabilitation. In the rush of events, however, the implementation of the idea was flawed. Dealing with child support issues is difficult in any event. When attempted at a sentencing hearing in a criminal case, it cannot be accomplished summarily, but requires reasonable procedural protections for the defendant. It may be that the amount determined could be permissible since two children are involved and appel-

lant may be able to pay that amount when he is employed. On the other hand, the children may have other sources of support or appellant may have other obligations which would affect his obligation to pay once he is employed. In any event, the Guidelines provide for some flexibility in setting the amount of child support based on the circumstances of the affected parties, *see* Guidelines, *supra,* 37 D.C.Reg. at 3725–27, which, on remand, the judge may wish to apply.[12]

Accordingly, we hold that the trial judge abused her discretion in setting the amount of the child support payment, and we reverse that part of the judgment and remand the case for further proceedings consistent with this opinion.

*Affirmed in part; reversed in part.*

---

2071; *Freeman v. Freeman,* 397 A.2d 554, 556 (D.C.1979). These considerations may make a probationer's compliance with such a condition difficult to evaluate, especially where, as here, the probationer was unemployed at the time the terms of probation were imposed.

**12.** Under the Guidelines, a non-custodial parent of two children who earns more than $7500 and less than $15,000 annually would, absent unusual circumstances, be required to pay 26 percent of his or her gross income for child support. There is no percentage for gross income under $7501, although the minimum amount of child support required is $50 a month. If appellant earns under $7501 annually, requiring him

to pay $50 a week could result in his paying as much as 32 percent of his gross income. Here the judge imposed an amount in excess of what the Guidelines would appear to permit since, as a non-custodial parent (so far as the record indicates) of two children under the age of six who earned less than $7501, appellant could not be ordered, except in unusual circumstances, to pay $50 a week in child support. 37 D.C.Reg. at 3731. Setting appellant's child support obligation above the amount typically required under the Guidelines may be permissible, but we cannot tell from the record. *Cf.* footnote 10, *supra.*