**UNITED STATES of America,**

v.

**Anthony Maurice McDONALD,**
**Appellant.**

**No. 92–3047.**

United States Court of Appeals,
District of Columbia Circuit.

Argued March 19, 1993.

Decided April 30, 1993.

Vincent A. Jankoski, Washington, DC, argued the cause and filed the briefs for appellant.

Steven N. Berk, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. With him on the brief were Jay B. Stephens, U.S. Atty. at the time the brief was filed, John R. Fisher and Kirby D. Behre, Asst. U.S. Attys., Washington, DC.

Before: RUTH BADER GINSBURG, STEPHEN F. WILLIAMS, and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Of the three issues presented in this appeal, the most serious concerns 21 U.S.C. § 860(a), a provision enhancing the maximum punishment for certain drug offenses committed within 1000 feet of a school, including the offense of possession with intent to distribute. The issue, left open in *United States v. Rogers*, 918 F.2d 207, 213–14 (D.C.Cir.1990), is whether § 860(a) requires the prosecution to prove not only possession of the drugs within the school. zone, but also intent to distribute them there. The district court ruled that the

government must prove both, *United States v. McDonald*, 777 F.Supp. 44 (D.D.C.1991), and so instructed the jury, which returned guilty verdicts on the possession-with-intent-to-distribute count, 21 U.S.C. § 841(a)(1), and on the derivative § 860(a) count. We hold, in Part II of the opinion, that the intended place of distribution is irrelevant under § 860(a).

I

■ We begin with McDonald's challenge to a search and seizure. In executing a search warrant, an officer "may break open any outer or inner door or window of a house ... if, after notice of his authority and purpose, he is refused admittance...." 18 U.S.C. § 3109. The question is whether evidence seized from McDonald's residence should have been suppressed for non-compliance with § 3109.

Police officers armed with a search warrant drove to the row house where McDonald resided. When they pulled up, their automobiles, one of which was marked, were visible from the house. Most of the officers, including one in uniform, approached the door. Annie Mitchell and her child were sitting on the steps. An hour earlier one of the officers had seen her sitting in the same spot. Sergeant Ash said to Mitchell: "We have a search warrant. Is anyone home?" Mitchell reacted by clutching her child and moving aside so the officers could pass. Sergeant Ash and the team proceeded to the entrance, yelled "Police" through the screen door, waited four to seven seconds, and entered, with Sergeant Ash announcing: "Police. We have a search warrant. Stay where you're at."

We put aside the fact that McDonald was not home when these events transpired. Whether he therefore lacked standing to complain about a violation of § 3109 is unnecessary to decide because, as the district judge ruled, there was no violation. *Compare Cross–Sound Ferry Services, Inc. v. ICC*, 934 F.2d 327, 333 (D.C.Cir. 1991). While the police did "break open" the unlocked screen door merely by opening it, *Sabbath v. United States*, 391 U.S.

585, 590, 88 S.Ct. 1755, 1758, 20 L.Ed.2d 828 (1968), § 3109 is concerned with an entry by these means when the officer gives "notice of his authority and purpose" and is then "refused admittance." Police who enter with consent are not constrained by § 3109. *See United States v. Patrick*, 959 F.2d 991, 998 (D.C.Cir.1992). Here the officers gave Mitchell sufficient notice of the search warrant and their intention to execute it. *See White v. United States*, 346 F.2d 800, 804 (D.C.Cir.1965), *cert. denied*, 382 U.S. 1014, 86 S.Ct. 625, 15 L.Ed.2d 529 (1966). At the time, Mitchell appeared to have some authority over the premises. The police therefore properly directed their announcement to her even though she was not in the house. *See generally* 2 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4.8(c), at 277–78 (2d ed. 1987). The district court, with commendable thoroughness, stated its "essential findings on the record," Rule 12(e), Fed.R.Crim.P., including its finding that Mitchell "acquiesced by moving aside," thereby voluntarily admitting the officers. There is no basis for upsetting the court's conclusion. Even if Mitchell's actions did not amount to silent consent, the police still complied with § 3109. The time between their statement to Mitchell and their entrance into the house gave Mitchell sufficient opportunity to respond. Her failure to do so, if not acquiescence, could reasonably have been taken to signify her unwillingness to yield. Since § 3109 does not force the police to wait until occupants verbalize their refusal, *see Masiello v. United States*, 317 F.2d 121, 122 (D.C.Cir.1963), the police satisfied the statute in entering when they did.

## II

In the house, McDonald resided in a rented second floor bedroom. There the police found his personal effects, about $400 in cash and eleven plastic ziplock bags holding crack cocaine. Nearby, in a hall closet, the police seized eleven more plastic bags also containing crack, bringing the total weight of the drugs recovered to more than five grams. On the first floor the police discovered dozens of small ziplock bags, many of which were in a front closet. This evidence, which the government introduced at trial, was more than enough to sustain the verdict finding McDonald guilty of possession with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). (After the verdict, the district court dismissed the § 841(a)(1) count as a lesser included offense.)

The house stood across the street from the Richardson Elementary School, its front door a mere ninety feet from the edge of the school's playground. The indictment thus contained the additional charge against McDonald of violating § 860(a), which states:

> Any person who violates section 841(a)(1) or section 856 of this title by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school ... [is] subject to [ ] twice the maximum punishment authorized by section 841(b) of this title....

21 U.S.C. § 860(a).

Two courts of appeals have interpreted § 860(a) to mean that so long as the possession in violation of § 841(a)(1) occurs within 1000 feet of a school, the maximum punishment is doubled. *United States v. Rodriguez*, 961 F.2d 1089 (3d Cir.1992); *United States v. Wake*, 948 F.2d 1422 (5th Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2944, 119 L.Ed.2d 569 (1992). The district judge in this case (777 F.Supp. at 47) joined colleagues here and in other districts who have read § 860(a) to require the prosecution to show, as an additional element, that the defendant intended to distribute the drugs within the school zone. *United States v. Liranzo*, 729 F.Supp. 1012, 1014 (S.D.N.Y.1990); *United States v. Roberts*, 735 F.Supp. 537, 543 (S.D.N.Y.1990); *United States v. Coates*, 739 F.Supp. 146, 153 (S.D.N.Y.1990); *United States v. Testa*, 768 F.Supp. 221 (N.D.Ill.1991); *United States v. Watson*, 788 F.Supp. 22, 24 (D.D.C.1992).

In their reading of § 860(a), these district courts have looked to the phrase "with intent to distribute," asked the question, "Distribute where?" and supplied the answer, "within one thousand feet" of a school. One explanation, offered in *Liranzo*, is that the geographic element should, as a matter of style, attach to the verb closest to it—"distribute." 729 F.Supp. at 1014. To read the statute this way would be to leave possession unbounded, to make possession anywhere a violation of § 860(a) so long as the defendant had in mind distributing at least some of the drugs near a school. That is not an unthinkable result, but several reasons lead us to reject it and to hold that the "one thousand feet" language in § 860(a) qualifies "possessing" rather than "to distribute."

In the first place, the geographic element appears to be aimed, not at any verbs in § 860(a), but at the section's verbal nouns, its gerunds. This much is certain with respect to the other two predicate offenses. The statute renders "distributing" within 1000 feet of a school and "manufacturing" within 1000 feet of a school twice as serious in terms of maximum punishment. To give § 860(a) an internally consistent reading, its other verbal noun—"possessing"—must be treated in the same manner. That is, when the "possessing" is done near a school, § 860(a) also renders the crime twice as serious. Under this interpretation, it is irrelevant whether the defendant had in mind any particular location for doing his distributing or whether, if he did, the spot was near a school.

The interpretation comes into sharper focus when one considers the judgment reflected in § 860—that individuals may deserve more severe punishment when they commit particular drug offenses near schools than when they commit the same offenses elsewhere. On what might this judgment rest? Not simply that the prospect of greater punishment will deter those who could involve students in drugs, or that society's greater moral outrage at drug traffickers who enlist minors deserves expression. Protection of students is doubtless behind § 860, but other statutes take care of enhancing the punishment of drug dealers who entice minors to participate in their illegal activities, or who actually distribute drugs to young people. 21 U.S.C. §§ 859, 861. Furthermore, nothing in § 860 turns on whether the defendant actually involved any students at the nearby school. The judgment § 860 embodies must rest instead on the desire to give students increased protection from the violence often accompanying serious drug offenses, and from the threat of having their lives corrupted through proximity to drug traffickers and their wares. *See, e.g., United States v. Jenkins*, 928 F.2d 1175, 1177–78 (D.C.Cir.1991); *United States v. Dunn*, 846 F.2d 761, 764 (D.C.Cir.1988); *United States v. Holland*, 810 F.2d 1215, 1219 (D.C.Cir.), *cert. denied*, 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987). This must be why manufacturers of controlled substances draw more punishment when they operate near a school. It must be why manufacturing, behind closed doors and unaccompanied by any distribution, is nevertheless within § 860(a)'s condemnation. And in our view it is why possessing drugs with an intention to distribute them anywhere is treated as doubly abhorrent when the possessor is in the vicinity of a school. With intended distribution, as with actual distribution and manufacturing, comes large quantities of drugs, and thus danger. The Fifth Circuit summed the matter up this way: "the existence of large quantities of prohibited substances in a school zone, not to mention the concomitant crimes and risk of harm associated with drug dealers, increases greatly the likelihood that schoolchildren will come in contact with them or otherwise be placed directly in harm's way." *Wake*, 948 F.2d at 1433. *See also Rodriguez*, 961 F.2d at 1094.

We do not deny that traffickers intending to distribute drugs near a school may be deserving of more punishment than traffickers bent on selling across town. One might say the same of crack manufacturers who intend to market their illegal products in a school's vicinity. *Cf. United States v. Lendmann*, 757 F.2d 916, 918–19 (7th Cir.1985). But § 860 does not draw

lines of this sort. As to the crime of possession with intent to distribute, the distinction § 860 makes is between those who violate § 841(a)(1) inside the school zone and those who violate § 841(a)(1) elsewhere. Because they endanger students, the former commit the more serious offense, and § 860 thus makes their potential punishment more severe.

To hold otherwise, to exclude from § 860's reach all possessors of large quantities of drugs in the vicinity of schools except those intending to distribute them there, would be to adopt an interpretation without supplying a rationale. Some of the district courts try to fill the gap by pointing to hypotheticals. These are easy enough to devise. Imagine, for example, a § 860 prosecution of a passenger carrying a large quantity of drugs on a train (*Coates*, 739 F.Supp. at 153), or in a subway car (*Wake*, 948 F.2d at 1433 n. 9) speeding by a school less than 1000 feet away. *See also Roberts*, 735 F.Supp. at 541 n. 6.

Judge Alito, writing for the Third Circuit, responded to such hypotheticals thus: "No matter how interpreted, the coverage of the schoolyard provision would not correspond precisely with the class of cases involving increased risk to students." *Rodriguez*, 961 F.2d at 1094. For instance, if the statute were interpreted to punish only possessors intending to distribute near a school, what of the times when the school is not in session? *Id.* at 1094–95. And as we have mentioned before, to interpret the statute in that manner would wind up excluding many cases in which the danger to students was in fact intensified. Legislatures undoubtedly estimate the malignity of an offense, not merely by assessing the harm produced by a single act, but by considering the general alarm and anxiety offenses of the sort can be expected to cause. Hypotheticals demonstrating particular instances in which no greater fear or insecurity could arise from the crime's proximity to a school thus fail to take into account the generalities on which § 860 quite properly rests.

In this regard, it is important to remember that § 860 simply increases the maximum punishment for offenses already punishable under other provisions. Suppose a prosecutor successfully obtained an indictment charging the speeding-train passenger under § 860 and suppose as well that the jury convicted. When it came to sentencing, however, there would be the possibility of the trial judge's ordering a departure under the Sentencing Guidelines. *See Rodriguez*, 961 F.2d at 1095 n. 8. Judges may consider "factors ... that have not been given adequate consideration by the [Sentencing] Commission." U.S.S.G. § 5K2.0, p.s. The Guidelines do not specifically address situations in which the fit is poor between the offense and the purpose of the statute violated. The effect of a conviction under § 860 rather than § 841 is usually an increase of one or two in the base offense level. *See* U.S.S.G. § 2D1.2. A successful prosecution under § 860 in a case with facts similar to the hypothetical thus might warrant a departure of this magnitude.

The opinions of the Third and Fifth Circuits discussed the legislative history of § 860. *Rodriguez*, 961 F.2d at 1092–93; *Wake*, 948 F.2d at 1431–32. We too have reviewed this material, which consists mainly of floor statements. We do not find any of it particularly persuasive. Several statements, like the statute itself, might plausibly support either of two interpretations, one favoring our view of § 860(a), the other the district court's. While we join the Third and Fifth Circuits in their reading of the statute, we therefore place no stress on legislative history.

■ As to the "rule of lenity," we do not think this aid to construction furnishes any assistance. The district court's alternative interpretation of § 860(a) is plausible, the language of the statute could bear it, but the interpretation is not cogent for the reasons we have given. Whatever uncertainty of meaning exists, it is far from "grievous," an essential condition for applying the canon. *See Chapman v. United States*, — U.S. —, —, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524 (1991), quoting *Hud-*

*dleston v. United States,* 415 U.S. 814, 831, 94 S.Ct. 1262, 1272, 39 L.Ed.2d 782 (1974). If lenity is appropriate in a particular case, a downward departure pursuant to the Sentencing Guidelines is the means for exercising it.

In McDonald's case, there was sufficient evidence to support the verdict finding him guilty of possession with intent to distribute, in violation of § 841(a)(1). To convict under § 860 the prosecution had only to prove the additional element of possession within 1000 feet of a school, which it did through uncontradicted evidence regarding the location of the house. While the district court instructed the jury that it had to find, in addition, that McDonald intended to distribute the drugs within the same radius, the error caused no harm to McDonald. Because the evidence was sufficient to support the verdict under a proper interpretation of § 860, which does not include the element added by the district court, we do not consider McDonald's claim that no reasonable juror could have found he intended to distribute the drugs from his home.

### III

▮ Under the Sentencing Guidelines, the district court assigned McDonald to criminal history category II with a base offense level of 28. This classification called for a term of imprisonment of 87 to 108 months; the court sentenced McDonald to the lowest term within the range. *See* U.S.S.G., ch. 5, pt. A. McDonald's final argument is that the court erred in placing him in criminal history category II. His argument rests on the following section of the Guidelines: "Sentences for expunged convictions are not counted [in the criminal history calculation]...." U.S.S.G. § 4A1.2(j). The district court improperly counted McDonald's juvenile conviction, he contends, because the conviction had been "set aside" pursuant to the District of Columbia Youth Rehabilitation Act (YRA). *See* D.C.CODE ANN. §§ 24–801 to 24–807. We hold that § 4A1.2(j) applies only to expungements, and therefore affirm McDonald's sentence.

McDonald's argument turns on how District of Columbia law treats juvenile convictions. The Sentencing Guidelines exempt "expunged convictions." The relevant District statute provides instead for a "set aside." McDonald had been convicted as a juvenile and sentenced to probation. A local court unconditionally discharged him from probation before completion of his sentence. Pursuant to the YRA, upon his early unconditional discharge, McDonald's conviction was "automatically set aside" and the local court issued "to the youth offender a certification to that effect." D.C.CODE ANN. § 24–806(d).

McDonald equates setting aside his conviction with expunging it. The Sentencing Commission has written an application note recognizing a distinction, for purposes of the Guidelines, between convictions "set aside" and those "expunged." The note states:

> *Convictions Set Aside or Defendant Pardoned.* A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, *e.g.,* in order to restore civil rights or to remove the stigma associated with a criminal conviction. Sentences resulting from such convictions are to be counted. However, expunged convictions are not counted.

U.S.S.G. § 4A1.2, comment. (n.10). The note explains that convictions excluded from the criminal history calculation are those in which the defendant was subsequently found innocent or which involved legal error. These convictions are classified as "expunged." Convictions removed from a defendant's record to serve some social policy goal are "set aside."

The YRA requires the local courts to set aside juvenile convictions, not because of legal error or the juvenile's innocence, but because the juvenile's post-offense conduct has persuaded the court to terminate his sentence of probation before the assigned completion date. The YRA's set aside reflects the social objective of encouraging the rehabilitation of juvenile offenders.

*See Brown v. United States*, 579 A.2d 1158, 1158–59 (D.C.1990). The words "set aside" in the YRA thus correspond, not to expungement, but to "set aside" in the Guidelines application note. *See United States v. Stowe*, 989 F.2d 261, 263 (7th Cir.1993).

The District's highest court also has interpreted "set aside" in this way. The YRA went into effect December 7, 1985. The District law was a response to the repeal, effective October 12, 1984, of the Federal Youth Corrections Act (FYCA). Pub.L. No. 98–473, tit. II, §§ 218(a)(8) & 235(a)(1)(A), 98 Stat. 2027, 2031 (1984); *see Latimore v. United States*, 597 A.2d 362, 363 (D.C.1991); *Brown*, 579 A.2d at 1158. The FYCA, like the YRA, provided for convictions to be "automatically set aside" and for courts to issue "to the youth offender a certificate to that effect." Pub.L. No. 87–336, 75 Stat. 750 (1961). The District of Columbia Court of Appeals carefully explained why, in sentencing a defendant who had committed another crime, it was proper to take into account the defendant's earlier conviction set aside under the FYCA. *Barnes v. United States*, 529 A.2d 284, 286–89 (D.C.1987). Setting aside a conviction may allow a youth who has slipped to regain his footing by relieving him of the social and economic disabilities associated with a criminal record. *Id.* at 288. But if a juvenile offender turns into a recidivist, the case for conferring the benefit dissipates. *Id.* Society's stronger interest is in punishing appropriately an unrepentant criminal. The *Barnes* court therefore held that the set aside provision did not require "obliteration of the record of conviction," *id.*, and concluded that "a conviction set aside pursuant to ... the FYCA may, without violating due process, be considered by the court when sentencing a defendant for a subsequent offense." *Id.* at 288–89; *cf. United States v. Doe*, 730 F.2d 1529, 1531–33 (D.C.Cir.1984).

While *Barnes* interpreted only the FYCA, the YRA is substantially the same as the federal law it replaced. McDonald has uncovered a piece of legislative history he thinks undermines *Barnes*. The District Council's Committee on the Judiciary identified, as one of the objectives of the YRA, affording "the opportunity for a deserving youth offender to start anew through expungement of his criminal record." *See Brown*, 579 A.2d at 1159, quoting REPORT OF THE COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON THE JUDICIARY, ON BILL 6–47, "THE YOUTH REHABILITATION ACT OF 1985," at 2 (June 19, 1985); *Latimore*, 597 A.2d at 365. The Committee's casual, and in this case misleading, use of "expungement" for "set aside" in describing the YRA is hardly surprising. The terms do have related meanings. *Cf. Latimore*, 597 A.2d at 364–66. At all events, the Committee may have been referring to expungement from public records, which would not preclude future use by law enforcement officials. *See Barnes*, 529 A.2d at 286, citing *Lindsay v. United States*, 520 A.2d 1059, 1063 (D.C.1987). As far as the Guidelines are concerned, the Committee's statement does not alter the fact that set asides for juvenile offenders in the District of Columbia are not the functional equivalent of "expunged convictions" under Guidelines § 4A1.2(j).

The Ninth Circuit has reached a different conclusion with respect to a California statute expressly providing that if a court "set[s] aside" a juvenile's conviction, the youth is "released from all penalties and disabilities resulting from the offense." CAL.WELF. & INST.CODE § 1772(a); *see United States v. Kammerdiener*, 945 F.2d 300 (9th Cir.1991); *United States v. Hidalgo*, 932 F.2d 805 (9th Cir.1991). The District's YRA contains no such provision. The Ninth Circuit also relied in part on what it believed to be the Supreme Court's construction of the FYCA in *Tuten v. United States*, 460 U.S. 660, 103 S.Ct. 1412, 75 L.Ed.2d 359 (1983), to preclude the use in sentencing of convictions "set aside" under the federal law. *See Hidalgo*, 932 F.2d at 807. The relevant passage in *Tuten* was dictum; the case concerned whether a juvenile conviction had in fact been "set aside." 460 U.S. at 662–65, 103 S.Ct. at 1414–15. The issue before us is whether under the Guidelines a court may count a conviction

actually "set aside." Furthermore, *Barnes* postdated *Tuten,* it specifically interpreted the FYCA to allow set aside juvenile convictions to be used in sentencing decisions, and it distinguished between convictions "set aside" and those "expunged" in the same manner the Guidelines application note suggests.

We therefore hold that the district court correctly counted McDonald's set aside juvenile conviction in determining his criminal history under the Guidelines.

*Affirmed.*